THE GERMANIA INSURANCE COMPANY

*v.*

CHARLES P. SWIGERT, Auditor.

*Filed at Springfield April 5, 1889.*

1. INSURANCE—*foreign companies—reciprocal burdens—when section 29 of the Insurance law of 1874 becomes operative.* The provisions of section 29 of the Insurance law of 1874, requiring insurance companies of other States having an agency in this State, to make the same deposits and to pay to the Auditor the same taxes, fines, penalties and license fees as is or may be required by the laws of such other State of such companies organized under the laws of this State to be paid, apply and become operative from the time of the enactment of such laws by such other States requiring companies of this State to make deposits or pay fines, taxes, penalties or license fees, whether any company of this State shall have established agencies there, or not.

2. The time when our law requires a foreign insurance company doing business in this State to pay the same license fees, etc., required by the laws of the foreign State of companies of this State doing business therein, is whenever the existing or future law of such other State shall require companies of this State to pay license fees, etc., for the privilege of doing an insurance business therein.

3. SAME—*Insurance law of the State of Louisiana—in respect to foreign agencies.* In the statute of the State of Louisiana, which requires insurance companies organized under the laws of other States, and having agencies in that State, to pay an annual license of $400, the words, "and having agencies in this State," are plainly but a part of the description of the subject matter upon which the law is to operate, and are not a statement of the time when the law is to exist or be in force.

4. SAME—*foreign agency of home company—report to Auditor.* There is no statute in this State requiring insurance companies organized under our laws to make a report to the Auditor whenever they establish agencies in foreign States, of that fact.

5. STATUTE—*law as a rule of conduct—to antecede the facts which may call it into action.* The existence of a law, and the existence of a present subject matter upon which it will take effect, are distinct things, the former depending upon the will of the legislature, and the latter upon the conduct of the people in the respect contemplated by the law after it is in force as a rule of action. The declaration of the rule of conduct must antecede the facts which call it into action.

6. APPEAL—*when State is interested.* In a suit by a foreign insurance company against the Auditor of Public Accounts, to recover back a license fee paid the latter under protest by the former, an appeal lies directly from the judgment of the trial court to this court, for the reason that the State is interested in the suit.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

This is assumpsit, by appellant, against appellee, for the recovery of $400, the amount of a license or tax collected by the latter of the former, under protest of the former. The following facts are agreed to:

"It is hereby stipulated, that for the purpose of settling the controversy now existing between the plaintiff and the defendant in the above entitled suit, in regard to the defendant's right or authority to levy, assess and enforce a reciprocal license tax or license fee against the plaintiff company, under section 29, chapter 73, of the Revised Statutes of the State of Illinois, the following statement of facts embraces the ultimate facts involved in said controversy, as the same can be established by competent proof, viz.:

"That the said Germania Insurance Company is a corporation organized under the laws of the State of Louisiana, and having its principal place of business at New Orleans, in said State; that on or about the 12th day of February, 1887, and for a long time prior thereto, the said plaintiff had fully complied with the Insurance law of the State of Illinois, except so far as relates to the license fee now in controversy, and was at said date doing business in said State in pursuance of said law, and that at said time Davis & Requa, of the city of Chicago, were the agents of said company; that on the day and year aforesaid, chapter 73 of the Revised Statutes of the State of Illinois was then in full force and effect, and among the provisions thereof were the following, viz., section 27, section 29, section 30; that in the year 1886 the General Assembly of the State of Louisiana amended and added to the insurance

law then existing in said State, further enactments and additions, among which was section 7 of article 101 of the law of 1886, which said section reads as follows, viz.:

" 'That each and every insurance company (society), association, corporation or other organization or firm or individual, doing and conducting an insurance business of any kind,—life, fire, marine, river, accident, or other,—in this State, whether such company (society), association, corporation or other organization or firm or individual is located or domiciled here, or operating here through a branch department, resident board, local office, firm, company, corporation or agency, of any kind whatsoever, shall pay a separate and distinct license on said business for each company represented, and said licenses shall be based on the gross annual amount of premiums on all risks located within this State, and upon risks located in other States or foreign countries, upon which no license has been paid therein, as follows, to-wit: '

"That after providing in a number of subdivisions for the license aforesaid, based upon the gross annual amount of premiums, as provided in said section 7, subdivision 12 reads as follows, viz.:

" 'When said premiums are $20,000, and less than $30,-000, the license shall be $400 : *Provided*, that no corporation not incorporated under the laws of the State, nor any foreign society, firm or partnership, shall do business in this State except through an agent duly authorized and accredited for the purposes of said business, and for all purposes connected with licenses and taxation and service of process, said agent to be appointed by authentic act, and a certified copy of the act to be deposited in the office of the Secretary of State. Any person or firm who shall fill up or sign a policy or certificate of insurance on open marine or fire insurance policy, or otherwise issue, by a corporation or association or persons not located or represented in this State by a legally authorized agent, shall be considered an agent of such corporation or

person or association, and shall be liable for all licenses, taxes and penalties enforced by the provisions of this act upon such person, corporation and association, as if represented by a legally appointed agent: *Provided*, that nothing herein contained shall apply to mutual aid societies which pay mutual insurance policies by assessments upon members, whether the same be or be not domiciled in this State.'

"That on the day and year aforesaid, and at the time of the passage of the said law by the said General Assembly of the said State of Louisiana aforesaid, there was not, nor had there been for a long time prior thereto, or at any time since, any insurance company organized under the laws of the State of Illinois, or any Illinois insurance company, doing business in the said State of Louisiana, or any point therein; nor was there at such time, or at the time of the said passage of the said act, any Illinois insurance company having agencies in said State for the purpose of transacting an insurance business therein, or for any other purpose whatever; that the gross amount of premiums on risks taken by the agents of the said insurance company at said Chicago, and located in the said State of Illinois in which the said agents were authorized to, and did from time to time, issue policies during the year 1886, upon which no license had been paid therein, amounted to the sum of $20,000, and was less than the sum of $30,000; that, acting under said section 29, of chapter 73, of the Revised Statutes aforesaid, on the said 12th day of February, 1887, Charles P. Swigert, Auditor of Public Accounts of the said State of Illinois, levied, assessed and charged upon the said insurance company a license fee to the amount of four hundred dollars ($400), an amount equivalent and equal to the sum so as aforesaid provided for in subdivision 12 of section 7 of the said act of the legislature of the State of Louisiana aforesaid, for the year 1887; that the said Auditor, further purporting to act in pursuance of said section 29, of chapter 73, of the Revised Statutes of said State of Illinois,

after the levy and charge so made by him in the manner and for the purpose aforesaid, notified said Davis & Requa, the agents of the said insurance company at Chicago, of said levy, assessment and charge, and thereupon requested payment thereof; that the said Davis & Requa, after communicating the fact of said levy to the officers of the said insurance company at New Orleans, in the said State of Louisiana, by direction of said company refused to pay the same, whereupon the said Auditor, acting in pursuance of the provisions of said chapter 73 of the Revised Statutes of said State of Illinois, threatened to withhold from or to refuse to issue to said company the license or certificate for the coming year provided for in and required by said act, and which had been previously issued to the said insurance company in former years, to enable said company to carry on the business of insurance in said State of Illinois in conformity with the requirements of the laws thereof, whereupon, and on the 23d day of July, 1887, the said insurance company, through its said agents, paid to the Auditor of said State, under protest, the said sum of $400 so levied and assessed in the manner and for the purposes aforesaid; that the said sum so paid to the said Auditor as aforesaid, was paid to and received by him upon the express understanding that the same was paid under protest, and that it should be so received, held and treated by him until such time as the question of the validity of said levy and charge could be tested in the courts of the said State of Illinois; that the said Auditor of Public Accounts, under said section 27 of said chapter 73, was authorized to charge and collect as fees for filing the annual statement, the agent's certificate, and for advertising said statement for the year 1887, the sum of $92, but no such fees were levied and charged under said section, nor was there any attempt to levy and make such charge or collect the same by the Auditor, nor were there any other fees levied and charged by the said Auditor of Public Accounts against the said plaintiff for the said year, save

16—128 ILL.

and except the said sum of $400 so levied and charged and collected in the manner and for the purpose aforesaid, under said section 29 of said chapter 73; that under the general revenue laws of the State of Louisiana, a foreign insurance company, like any other citizen or inhabitant of said State having and owning real and personal property therein, is taxed upon the fair market value of said real estate and personal property at the rate of six mills on the dollar, but there were no fees in said State, imposed by the insurance laws thereof, and in force therein at the time of the levy and charge of the said license fee of $400, corresponding to those imposed by said section 27, nor is there any such tax imposed by the revenue laws of said State; that there is no statute in force in the State of Louisiana, nor was there any at the time of the levy and charge and payment of the said sum of $400, corresponding to said section 29, of chapter 73, of the Revised Statutes of the said State of Illinois, nor was or is there in force in said State any statute whatever upon the subject of reciprocal tax; that the foregoing facts are to have the same weight and effect with the court, but no greater, than they would have if offered and admitted in evidence on the trial of said cause in the usual and regular way; and in stipulating the facts in the case, the defendant is not to be considered as waiving any rights he would have on the trial of said cause before a court and jury in the way provided by law, and on the trial thereof may except and preserve exceptions to any of the facts contained in said stipulation, in the same manner and to the same extent as might be done in the trial of said cause, and where the evidence was offered and received by the court on the trial thereof in the usual and ordinary manner; that either party to said suit may refer to any section or sections of the insurance laws of the said State of Louisiana not herein set forth, and to any section or parts of the revenue laws of said State which would be admissible in evidence upon trial in the usual way, and which may be deemed necessary and material to a

full presentation of the questions of law involved in said suit, and to the same extent as though said laws had been incorporated in said stipulation, or set out in full in the declaration in said suit."

Judgment was rendered for the defendant, and the plaintiff brings the case here by appeal.

Mr. D. J. SCHUYLER, for the appellant:

The assessment and charge made on the plaintiff by the Auditor was invalid, and the plaintiff is entitled to judgment for the amount paid, as there was no Illinois company doing business in Louisiana. *Goldsmith* v. *Insurance Co.* 62 Ga. 379.

It is a familiar canon of statutory construction, that the legislature must have intended what they have actually expressed, unless some manifest incongruity would result from doing so, or unless the context clearly shows that such a construction would not be the right one. Potter's Dwarris, 206; *Jackson* v. *Lewis*, 17 Johns. 475; *People* v. *Railroad Co.* 13 N. Y. 77; *Martin* v. *Swift*, 120 Ill. 488.

If the expression, "and having agencies in such other States," is to be construed according to the ordinary and popular sense of the words, the Auditor could not collect the amount fixed by the Louisiana law. *Stuart* v. *Hamilton*, 66 Ill. 253.

That the judgment should be reversed, see Cooley on Taxation, 268, 269; *State Tonnage Tax cases*, 12 Wall. 204; *Gage* v. *Bailey*, 102 Ill. 11; *Bradford* v. *Chicago*, 25 id. 411; *Erskine* v. *Van Andale*, 15 Wall. 75; *La Salle County* v. *Simmons*, 5 Gilm. 513; *Pemberton* v. *Williams*, 87 Ill. 15.

Mr. GEORGE HUNT, Attorney General, for the appellee:

The statute makes it the duty of all insurance companies doing business in this State to file certain statements with the Auditor, to pay certain fees, and procure from the Auditor a license. Section 27, chapter 73, of the Revised Statutes, fixes certain fees to be paid by such companies, and section 29 re-

quires that foreign insurance companies shall pay the same license fees, etc., as the laws of their States require of companies of this State doing business in such other States. This latter section has been decided to be a valid law. *Insurance Co.* v. *Swigert,* 104 Ill. 653.

The language of section 29 does not make the collection of what is called the "reciprocal fee," depend, in any degree, upon whether or not a company from this State is in fact doing business in such other State, or in fact has agencies there. The condition upon which the increased fee becomes payable and section 29 becomes operative, is, "whenever the existing or future laws of any State" require a greater payment from companies of this State having agencies in such State than is required by the other laws of this State from companies of such State, then a like amount shall be required in this State. *Goldsmith* v. *Insurance Co.* 62 Ga. 383.

Mr. Justice Scholfield delivered the opinion of the Court:

This appeal is prosecuted directly to this court, instead of to the Appellate Court, by virtue of section 2 of the act of June 3, 1879, amending section 88 of the Practice act, (Laws of 1879, p. 222,) because the State is interested in the result.

Section 29, of chapter 73, of the Revised Statutes of 1874, is as follows:

"Whenever the existing or future laws of any State of the United States, or any other kingdom or country, shall require of insurance companies incorporated by or organized under the laws of this State, and having agencies in such other State, kingdom or country, any deposit or securities in such State, kingdom or country, for the protection of policy holders or otherwise, of any payment for taxes, fines, penalties, certificates of authority, license fees or otherwise, greater than the amount required for such purposes from similar companies of other States by the then existing laws of this State, then, and in every such case, all companies of such States establishing,

or having heretofore established, an agency or agencies in the State, shall be and are hereby required to make the same deposit, for a like purpose, with the Auditor of this State, and to pay to the Auditor, for taxes, fines, penalties, certificates of authority, license fees and otherwise, an amount equal to the amount of such charges and payments imposed by the laws of such State upon the companies of this State and the agents thereof: *Provided*, that the payment required of such foreign companies shall in no case be less than required by this act."

The constitutionality of this section was sustained in *Home Ins. Co.* v. *Swigert*, 104 Ill. 666, and the only question upon it now presented for our determination is, whether it becomes operative at the time of the enactment of the law, with the designated requirement, by the foreign State, or not until a company acting under the laws of this State shall have agencies for the purpose of engaging in business in such foreign State. The court below held the former, and counsel for appellant contend for the latter. Appellant's counsel contends, that the words "and having" are qualified by the word "whenever," so that the sentence should read, "whenever the existing or future laws of any State * * * shall require, * * * and when such companies shall have agencies in such other State," etc. But this is, palpably, contrary to the natural meaning of the language as employed in the section. The *time when* is, plainly, "whenever the existing or future laws of any State * * * *shall require*," etc. Does a law any the less require a thing to be done because there is no present subject matter upon which to operate? The requirement of the law is but the declaration of the rule to be observed, and it must antecede the facts which call it into action. The existence of the law, and the existence of a present subject matter upon which it will take effect, are entirely distinct things. The former depends upon the will of the legislature, while the latter depends upon the conduct of the people in the respect contem-

plated by the law, after the law is in force as a rule of action. Thus, the law prohibiting sales of spirituous liquors without a license, is none the less the law because nobody may want to sell liquors. It does not actively operate upon any particular person until some one wants to sell liquors; but whenever that occurs, it is actively operative upon *that* person, although it may be years after the law first went into force as a rule of action. So, here, the existing law in Louisiana requires of insurance companies organized under the laws of other States, (and therefore of this State,) and having agencies in that State, to pay an annual license of $400, etc. The words, "and having agencies in this State," as they occur in that law, are plainly but a part of the description of the subject matter upon which the law is to operate, and are not a statement of the *time when the law is to exist or be in force.* The existing law makes the requirement,—declares the rule,—and it remains in force just as well without as with a present subject matter upon which to actively operate. And since it is the *existence of the law,* and not the *application of the law to its subject matter,* that determines when section 29 shall be obligatory, it must follow that it is unimportant whether insurance companies organized under the laws of this State have agencies in the State of Louisiana or not.

The manifest purpose of this enactment is to restrict insurance companies of other States in doing business in this State, by precisely the same restrictions with which insurance companies of this State are restricted in doing business in such other States, respectively, and so, necessarily, our law must read, with respect to insurance companies of Louisiana doing business in this State, in the exact language and meaning of the law of Louisiana with respect to insurance companies of other States doing business in that State. But the contention of counsel for appellant leads to the absurd (as it seems to us) result, that because the State of Louisiana has imposed upon all foreign insurance companies such severe restrictions as to

practically prohibit Illinois insurance companies from doing business in that State, no restriction is imposed by the laws of this State upon insurance companies of Louisiana doing business in this State, other than such as are imposed upon domestic companies, since it is evident that the sole reason why Illinois insurance companies have no agents for the transaction of business in the State of Louisiana, may be, and probably is, because of the severity of the restrictions imposed by the laws of that State upon insurance companies of other States doing business in that State. Plainly, it is intended that as the law of that State operates upon us, so the law of this State must operate upon them, and the same payment which our companies must make as a condition to doing business there, their companies must make as a condition to doing business here.

Moreover, it may be added, as a circumstance strongly corroborative that this was the legislative intent, that no provision is anywhere to be found, in any statute, whereby the Auditor can ascertain whether insurance companies organized under the laws of this State have agencies in the State of Louisiana, or in any other foreign State. The Auditor can not be expected to travel abroad in quest of such information, and he can employ no messenger to do so unless expressly authorized by statute, of the existence of which there is no pretense. No statute authorizes him to act upon reports, in this respect, made by officers of a foreign State, even if reports are there made, of which there is no evidence; and no statute requires insurance companies organized under the laws of this State to make report to the Auditor whenever they establish agencies in foreign States, of that fact. So, in a legal point of view, it is impossible for the Auditor to obtain evidence of the facts upon which, alone, as appellant's counsel contends, this section becomes operative, and hence, if appellant's contention be maintained, the legislature has simply enacted a section without providing legal means for its enforce-

ment.    Such a conclusion is never admissible, unless by no reasonable construction of the language employed is it possible to escape it.    The language of the court in *Home Ins. Co.* v. *Swigert*, 104 Ill. 653, is to be read with reference to the questions then before the court.    The question of whether insurance companies of this State must have agents doing business in the State of Louisiana, before the law of this State, *supra*, can operate upon insurance companies of Louisiana doing business in this State, was not before the court, and no rule in that respect was intended to be there announced.

Agreeing with the court below in its construction of the section, the judgment must be affirmed.

*Judgment affirmed.*