(Nos. 21266, 21267.—

THE UNION CENTRAL LIFE INSURANCE COMPANY, Appellant, *vs.* LEO H. LOWE, Director of the Department of Trade and Commerce, Appellee.

*Opinion filed June 24, 1932—Rehearing denied October 7, 1932.*

BROWN, HAY & STEPHENS, (LOGAN HAY, and ROBERT A. STEPHENS, JR., of counsel,) for appellant.

OSCAR E. CARLSTROM, Attorney General, (B. L. CATRON, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The Union Central Life Insurance Company filed a bill of complaint in the circuit court of Sangamon county against Leo H. Lowe, as Director of the Department of Trade and Commerce, for a restraining order commanding him to hold to the credit of complainant the sum of $11,166.14 paid under protest as a portion of its privilege tax for the year beginning July 1, 1930, and not to pay it to the Treasurer of the State of Illinois. It also filed a similar bill concerning $46,268.69 paid under protest as a part of its privilege tax for the year beginning July 1, 1931. In each case a demurrer was sustained to the bill as amended and the bill was dismissed for want of equity. The two proceedings come to this court by separate appeals and have been consolidated here.

The question at issue is the proper interpretation and application of the statutes relating to the franchise or privilege tax. Appellant is a life insurance company organized under the laws of Ohio and authorized as a foreign corporation to transact business in Illinois. Section 1 of the act in relation to the taxation of non-resident insurance companies (Cahill's Stat. 1931, chap. 73, par. 79,) provides that "each non-resident corporation, * * * licensed and admitted to do an insurance business in this State shall, except as herein otherwise provided, pay an annual State tax for the privilege of doing an insurance business in this State, equal to two percentum on the gross amount of premiums received during the preceding calendar year on contracts covering risks within this State, * * * after deducting from such gross amount of premiums the amount

of returned premiums on canceled policies covering risks within this State; * * * also the amount paid for re-insurance of risks within this State to companies duly licensed to transact business in this State, and also the amount returned to holders of policies on risks within this State as dividends, paid in cash or applied in the reduction of premiums." Section 2 provides: "If the laws of another State or Territory shall require of insurance corporations, companies or associations organized under the laws of this State, and doing business in such other State or Territory, payments for taxes, fines, penalties, certificates of authority, license fees or otherwise, on a basis or rate which will produce amounts greater than would be produced by the application of the basis or rate provided for herein and by any other laws of this State, then and in every such case insurance corporations, companies and associations of such State or Territory, when admitted and licensed to do an insurance business in this State, shall be required to pay for such privilege on the same basis or rate as is imposed by the laws of such State or Territory upon similar insurance corporations, companies and associations organized under the laws of this State. In the imposition of any privilege tax under this section all of the provisions of this act, so far as applicable, shall be observed."

The Ohio Code (sec. 5432) provides that every insurance company incorporated by authority of another State or government shall in its annual report set forth the gross premiums received by it from policies covered by risks in the State of Ohio during the preceding calendar year, without deduction for commissions, return premiums, considerations paid for re-insurance or any deductions whatever, together with the amount of return premiums paid for cancellations and considerations received for re-insurance in that State. Section 5433 as amended by act May 11, 1927, 112 Ohio Laws, p. 429, and act February 19, 1929, 113 Ohio Laws, p. 7, provides for a tax upon

the business transacted in that State for the period shown by the annual statement required under section 5432 after deducting return premiums and the amount received for re-insurance. The statute fixed the rate at three per cent up to February 19, 1929, and two and one-half per cent after that date. It makes no provision for allowing the deduction of dividends paid in any manner.

The provisions of the statutes of both States are alike in that they allow a deduction for returned premiums on canceled policies. They are different in that the amount paid for re-insurance is a deductible allowance in Illinois, while in Ohio the amount received for re-insurance is deductible. In Illinois, dividends paid in cash or applied in the reduction of premiums are allowable deductions, but the Ohio statute has no such provision.

Appellant's annual report for the calendar year 1929 showed gross premiums of $4,033,869.97. Upon this sum the Director of Trade and Commerce assessed a tax of $103,655.83. The appellant company protested the payment of $11,166.14 thereof, which it claimed should be allowed as a deduction for money paid out on re-insurance. The assessment was made under the provisions of section 2 of the Illinois act and the tax was assessed on the basis and rate provided by the Ohio statute. Appellant insists that the tax should have been assessed under section 1 of the act, but claims that even if the assessment was made under section 2 the company should have credit for $11,166.14 on account of amounts paid by it for re-insurance. It contends that the re-insurance companies also paid a tax of $11,166.14 on the re-insurance premiums, and therefore the assessment against appellant to that amount constitutes double taxation and is void.

As to the 1931 tax, appellant's annual report for 1930 showed gross premiums of $3,992,854.26. A deduction of $9760.36 is claimed because the company paid out $485,-318.01 for re-insurance. A deduction is also claimed on

account of dividends paid out. The total tax of 1931 was calculated and assessed on the gross amount received at the rate of two and one-half per cent and amounts to $99,821.36. It is likewise the contention of appellant that this tax should have been computed under section 1 of the Illinois statute at the rate of two per cent on the gross amount, less the amount paid for re-insurance and dividends, and that by such method the tax should be $53,552.67. Appellant paid the total amount assessed against it, protesting the payment of $46,268.69. It urges that if the retaliatory section of the Illinois statute is given the interpretation contended for by appellee it would be unconstitutional.

The several sections of the act governing the taxation of non-resident insurance companies must be construed together. Under such construction their effect is that the taxes to be paid by foreign companies doing business in this State shall in all cases be governed by the general provisions of the act, exclusive of the second section, except where the statute of a foreign State imposes upon an Illinois company doing business in such foreign State a higher rate of taxation than is required by the general provisions of the Illinois act. In such a case section 2 will apply to the companies of that State doing business here. *Home Ins. Co.* v. *Swigert,* 104 Ill. 653.

The contention of appellant that it should be allowed a credit for the amount paid by it for re-insurance is based upon the theory that in procuring such re-insurance it is obliged to assume the payment of the tax, and the re-insurance company is also taxed on that particular business, and thereby a double burden of taxation is imposed upon the business so re-insured. Double taxation is universally condemned by the courts as contrary to the policy of the law, (Cooley on Taxation, (4th ed. Nichols, 1924,) sec. 224,) but the record in this case does not show that a double tax has been imposed upon the same subject matter. If a foreign company after writing business in the State of Illinois

desires to indemnify itself in whole or in part on account of such risks and re-insures them in another company, that transaction is separate and distinct from the original undertaking. In the original transactions in this case appellant was the insurer. When it procured re-insurance it became an insured. Re-insurance is defined to be a contract that one insurer makes with another to protect the first insurer from a risk it has already assumed. The contract of insurance and that of re-insurance remain totally distinct and unconnected. The re-insurance contract is not one of insurance but simply one of indemnity. (*Vial* v. *Norwich Fire Ins. Society,* 257 Ill. 355; *Baltica Ins. Co.* v. *Carr,* 330 id. 608.) Any premium that a company may pay for the indemnity purchased, whether it be less or greater than the premium it received on its original contract of insurance, is in no way connected therewith. The fact, if it be a fact, that the re-insurer charges a premium sufficient to cover its tax upon the re-insurance written in no way connects the re-insurance premium with the original premium. The tax in each case is imposed upon the particular transaction. In a contract of re-insurance it is not the original premium which is taxed but it is the re-insurance premium which is assessed. It cannot, therefore, be said that a double tax on the same business or the same premium has been imposed. The General Assembly has power to prescribe the terms and conditions upon which foreign corporations (other than corporations engaged in interstate commerce and those constituting instrumentalities of the United States government) shall be allowed to do business in this State. It also has the power to impose a tax both upon the business of insurance and re-insurance, and there is no inconsistency in the exercise of both powers. Under a proper interpretation of the statute, re-insurance premiums paid by appellant are not deductible credits.

Appellant contends that to apply section 2 of the Illinois act to all Ohio companies doing business here gives the

section an unconstitutional result, because the laws of Ohio do not impose upon all companies higher taxes than does section 1 of the Illinois act. Statutory provisions such as section 2 are known as retaliatory statutes. Our statute substantially says: "If other States collect from Illinois companies taxes at a greater rate than we tax their companies we will collect from their insurance companies at the same rate." (*Metropolitan Life Ins. Co.* v. *Boys*, 296 Ill. 166.) The substance of appellant's contention is, that before section 2 can be applied it must appear that the Ohio law will always work out higher taxes than the Illinois law, and unless it accomplishes that result it cannot be applied in a particular case. If this doctrine should be upheld it would virtually nullify the provisions of the Illinois law. But this court has already condemned such a doctrine in *Home Ins. Co.* v. *Swigert, supra,* where the insurance company instituted an action against the Auditor of Public Accounts under section 29 of the general Insurance act, commonly known as the reciprocity provision, to recover taxes paid under the provisions of that act. That section differed but slightly from the section under consideration in this case. It was attacked on the ground that it created an unreasonable classification, but its constitutionality was upheld. In *Germania Ins. Co.* v. *Swigert,* 128 Ill. 237, the application of the same statute was in issue. The insurance company involved was a Louisiana corporation, and no Illinois corporation was engaged in business or had paid any tax in that State. This court sustained the tax against the insurance company on the ground that it was the same as would have been required by the Louisiana law if an Illinois company were doing business in that State. We said: "Plainly, it is intended that as the law of that State operates upon us so the law of this State must operate upon them, and the same payment which our companies must make as a condition to doing business there, their companies must make as a condition to doing business here." The effect

of each of these decisions is that section 2 of our statute will be applied whenever a case is brought within its provisions. It is but a simple matter of calculation to demonstrate that the Ohio rate, when applied to the facts in the case at bar, will produce a tax considerably higher than the Illinois rate would produce on the same transactions.

It is finally insisted by appellant that its privilege tax cannot be assessed under section 2 because the tax in Ohio is assessed for the preceding year while in Illinois it is payable in advance. Under the terms of each statute the tax is computed upon the amount of business transacted in the preceding calendar year. On that basis the Ohio rate will produce a greater amount than will be produced by the Illinois rate. Whether the tax is to be paid in advance or at the end of the year is immaterial.

The action of the chancellor in sustaining the demurrers and dismissing the bills for want of equity was correct, and the decrees are affirmed.

*Decrees affirmed.*