THE MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Plaintiff-Appellee, *v.* PHILIP R. O'CONNOR, Director of Insurance, *et al.*, Defendants-Appellants.

Fourth District    No. 16764

Opinion filed August 7, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Myra Turner, Assistant Attorney General, of counsel), for appellants.

Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield (Patrick V. Reilly and William S. Hanley, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Retaliatory tax imposed in Illinois.

Foreign insurance company obtained summary judgment below for a refund.

We affirm.

The Minnesota Mutual Life Insurance Company—a Minnesota corporation licensed to sell various types of insurance in Illinois—sued to recover the retaliatory tax assessed against it by the Illinois Director of Insurance. This State's Department of Insurance notified the plaintiff of deficient and delinquent tax payments for the years 1976 and 1977 and in the amounts of $6,933.48 and $40,202.28, respectively, based on the retaliatory tax provision for insurance companies, which is section 444 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 1056). The amounts include 1% interest, apparently through April 28, 1978. After paying the tax and interest under protest, Minnesota Mutual sued to recover the total amount of its payments, $47,135.76. The trial court granted the plaintiff's motion for summary judgment and ordered the defendants to refund the money. We affirm.

The parties agree that the origin of this dispute lies in the different methods used by Illinois and Minnesota for computing foreign insurance companies' privilege taxes: although both States tax foreign insurance companies at a rate of 2%, they differ in their definitions of taxable income. *Illinois* counts premiums from annuities as "gross taxable premium income" and permits a corresponding deduction for returned annuity premiums (Ill. Rev. Stat. 1979, 1980 Supp., ch. 73, par. 1021; the most recent amendment does not pertain to the computations at issue here). *Minnesota* does not include annuity premiums in a company's "net taxable business" and thus does not permit a company to deduct them when returned. Minn. Stat. Ann. §60A.15 (West).

During 1976, Minnesota Mutual returned a large amount of annuity premiums—over $2,000,000—and deducted this sum from its taxable income; according to the plaintiff, the tax payment schedule causes its taxes for both 1976 and 1977 to be involved. Because Minnesota would not

have allowed an Illinois company to deduct the returned annuity premiums, the defendants applied the retaliatory provision to recover the difference.

The retaliatory tax is triggered when the laws of another State impose on insurance companies incorporated in Illinois greater burdens than Illinois imposes on foreign insurance companies. In that event the provision comes into play and applies the foreign State's laws to insurers from that State:

> "Whenever the existing or future laws of any other state or country shall require of companies incorporated or organized under the laws of this State as a condition precedent to their doing business in such other state or country, compliance with laws, rules, regulations and prohibitions more onerous or burdensome than the rules and regulations imposed by this State on foreign or alien companies, or shall require any deposit of securities or other obligations in such state or country, for the protection of policyholders or otherwise or require of such companies or agents thereof or brokers the payment of penalties, fees, charges or taxes greater than the penalties, fees, charges or taxes required in the aggregate for like purposes by this Code or any other law of this State, of foreign or alien companies, agents thereof or brokers, then such laws, rules, regulations and prohibitions of said other state or country shall apply to companies incorporated or organized under the laws of such state or country doing business in this State, and all such companies, agents thereof, or brokers doing business in this State, shall be required to make deposits, pay penalties, fees, charges and taxes, in amounts equal to those required in the aggregate for like purposes of Illinois companies doing business in such state or country, agents thereof or brokers. * * *" (Ill. Rev. Stat. 1979, ch. 73, par. 1056.)

The statute may also be invoked when another State limits the sorts of risks that an Illinois company may insure against; if the Director of Insurance finds the Illinois company, *inter alia*, fiscally sound, he may restrict in a similar fashion the operations of all companies from that State. The legislature added this last part to the statute in 1941. See Ill. Ann. Stat., ch. 73, par. 1056, Historical Note, at 311 (Smith-Hurd 1965).

■■ The retaliatory statute is penal and therefore must be construed narrowly. (*Metropolitan Life Insurance Co. v. Boys* (1920), 296 Ill. 166, 129 N.E. 724.) It is a *lex talionis* and is not designed to raise revenue; rather,

> "* * * the principal purpose of retaliatory tax laws is to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes." (*Western*

*& Southern Life Insurance Co. v. State Board of Equalization of California* (1981), ___ U.S. ___, ___, 68 L. Ed. 2d 514, 531, 101 S. Ct. 2070, 2083.)

If the privilege taxes of another State evince an inhospitable climate for Illinois insurers, then Illinois will respond in kind and impose similar burdens on insurance companies from the other State. Analysis of whether the retaliatory tax should be applied proceeds on a State-by-State basis; the retaliatory tax thus maintains equality of treatment between Illinois and each of the other States. In discussing its own State's retaliatory tax, one court observed:

> "The retaliatory statute plainly demands 'an eye for an eye, and a tooth for a tooth.' * * * The taking of an eye for a tooth, or a tooth for an eye, cannot be permitted. The statute demands like for like." *State ex rel. O'Brien v. Continental Insurance Co.* (1917), 67 Ind. App. 536, 562-63, 116 N.E. 929, 936.

■■ The defendants argue that the retaliatory provision may be invoked and another State's tax scheme applied whenever a foreign insurance company would pay more in taxes under its home State's laws than under the laws of Illinois. This interpretation of the statute necessarily leads to a company-by-company analysis of profit-and-loss statements. The defendants suggest that the decision whether to apply section 444 to the plaintiff is a simple matter of calculation: compute the plaintiff's tax under the Illinois privilege tax and then under Minnesota law; if the Illinois tax is greater, the retaliatory law need not be used, but if the Minnesota tax is greater, then invoke section 444; in any case, charge the greater amount of tax.

The defendants' argument is incorrect, however, for under that approach the retaliatory provision may be applicable to some but not all insurance companies from the same State. And this does not square with the retaliatory provision, for by its own terms the statute is applicable to all insurers from a given State. Application of section 444 therefore cannot depend on companies' financial records. We agree with the plaintiff that the focus of section 444 is instead on the laws of the foreign State. The reference in the retaliatory provision to the "laws, rules, regulations and prohibitions" of another State and its application to all companies incorporated in that State and doing business in Illinois means that the decision whether to use the statute must be based on the text of the foreign State's privilege tax, not on the fluctuations of one company's business.

The defendants rely principally on *Union Central Life Insurance Co. v. Lowe* (1932), 349 Ill. 464, 182 N.E. 611, which involved the taxation of an insurance company incorporated in Ohio. At that time the Illinois privilege tax was 2% of gross premiums and permitted deductions for

amounts paid in dividends and for reinsurance; the Ohio tax was 2½% of gross premiums and allowed the deduction of amounts received from reinsurance. In upholding the imposition of the retaliatory provision against Union Central the court said:

"It is but a simple matter of calculation to demonstrate that the Ohio rate, when applied to the facts in the case at bar, will produce a tax considerably higher than the Illinois rate would produce on the same transactions." (349 Ill. 464, 471, 182 N.E. 611, 614.)

Although this language supports the defendants' argument that the retaliatory tax is triggered by comparing how an insurance company will fare under the tax laws of Illinois and of its home State, the case construed an earlier version of the retaliatory provision; the statute was amended in 1937 to substantially its current form. When *Union Central* was decided, the statute said:

"If the laws of another state or territory shall require of insurance corporations, companies or associations organized under the laws of this State, and doing business in such other state or territory, payments for taxes, fines, penalties, certificates of authority, license fees or otherwise, on a basis or rate which will produce amounts greater than would be produced by the application of the basis or rate provided for herein and by any other laws of this State, then and in every such case [insurance companies from that State] shall be required to pay for such privilege on the same basis or rate as is imposed by the laws of such state or territory upon [Illinois insurance companies]." (Ill. Rev. Stat. 1931, ch. 73, par. 80 (Cahill).)

Also, because the Ohio tax rate was .5% greater than the Illinois rate, it was clear that if the deductions were ignored the Ohio tax would always be greater. The court in *Union Central* disagreed, however, with the insurance company's argument that the foreign tax must always be greater to justify the use of the retaliatory provision.

Although the Illinois retaliatory provision has been invoked even when no Illinois company is doing business in the foreign State (*Germania Insurance Co. v. Swigert* (1889), 128 Ill. 237, 21 N.E. 530), the supreme court has refused to apply it when no Illinois companies fit within a special classification. Thus, the business experience of companies will be examined when that is necessary for determining which tax would be assessed against Illinois companies doing business in the foreign State. *Massachusetts Mutual Life Insurance Co. v. Parkinson* (1953), 414 Ill. 120, 110 N.E.2d 256, clarifies the extent to which we should look at the effect of foreign tax laws on Illinois companies in deciding whether the retaliatory provision may be applied. Massachusetts had changed the method for computing its privilege tax; beginning January 1, 1944,

Massachusetts applied a tax scheme similar to that used by Illinois, but to effect the changeover to the new system the law provided for use of the old tax in certain cases. The new tax was immediately applicable to insurers beginning business in Massachusetts after January 1, 1944. The statute contained two additional rules for companies already doing business in Massachusetts on or before that date: if the tax under the old system was less than that under the new, the old tax was to be imposed until it equalled or exceeded the new tax; if the tax under the old system was greater than that under the new, the old tax was to be used until equalled or exceeded by the new tax. The court observed that only if the last provision were applicable could the Illinois retaliatory tax be invoked. The court therefore had to determine which tax Massachusetts was applying against Illinois companies, and a stipulation of facts provided the answer that neither of the two Illinois companies doing business in Massachusetts fell within the third category. The court in *Massachusetts Mutual* did not overrule *Germania*; justification for its necessary departure from the rule implicit in that case was found in the multiplicity of tax schemes available in Massachusetts. The foreign tax could not be determined by examining only the statute.

Here, Minnesota uses only one method, applicable to all companies, to compute its privilege tax. As the facts in this case demonstrate, a comparison of the Minnesota and Illinois privilege taxes does not show which one is invariably or even generally the more onerous; both States use the same 2% rate, but they treat annuity income and losses differently. Although it permits one to see yearly the varying effects of the different taxes, the defendants' procedure is contrary to the statutory scheme.

Given our disposition of this case we need not address the plaintiff's argument that the defendnts have applied the retaliatory tax unconstitutionally.

Affirmed.

GREEN and WEBBER, JJ., concur.