THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Plaintiff-Appellant, v. JOHN WASHBURN, Director of Insurance, *et al.*, Defendants-Appellees.

Fourth District   No. 4—88—0816

Opinion filed June 1, 1989.

William S. Hanley and Patrick V. Reilly, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, and Pfeifer & Kelty, P.C., both of Springfield (Robert J. Ruiz, Solicitor General, and Robert E. Wagner, Special Assistant Attorney General, of counsel), for appellees.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by plaintiff the Mutual Life Insurance Company of New York (MONY), a life insurance company organized under the laws of the State of New York and authorized to do business and doing business in Illinois, from an order of the circuit court of Sangamon County granting summary judgment in favor of defendants John Washburn, Director of Insurance of the State of Illinois (Director), and James Donnewald, State Treasurer of the State of Illinois (Treasurer). The action was initiated by MONY pursuant to the State Officers and Employees Money Disposition Act (Act) (Ill. Rev. Stat. 1987, ch. 127, par. 170 *et seq.*) to contest the assessment of the foreign insurance company retaliatory tax for the year 1980 of $321,129.54 pursuant to section 444 of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 1056). Plaintiff paid this sum under protest, and plaintiff's complaint sought a temporary restraining order, a preliminary injunction and a permanent injunction, each without bond, to: (1) restrain the Treasurer from transferring the monies out of the protest fund; (2) restrain the Director from depositing the monies into any fund other than the protest fund or disposing of the monies in any way other than as provided by the Act; and (3) restraining defendants from assessing against, imposing on, or collecting from plaintiff any

tax, deficiencies, interest, or penalties connected with this matter and from taking any action to collect or recover from plaintiff the monies paid under protest. The complaint further prayed the court to declare the collection of the tax to be unwarranted and to order a refund of all monies paid under protest, plus interest.

On April 23, 1984, the Illinois Department of Insurance (Department) assessed plaintiff $234,401.12 as a retaliatory tax for the calendar year 1980, plus $86,728.42 interest thereon. Plaintiff paid the assessment under protest and obtained an injunction prohibiting the Treasurer from dispersing the funds pending a resolution of this action.

MONY was audited for the years 1980, 1981, and 1982 and was found by the Department to owe a retaliatory tax for 1980 only. At the time of the audit, the Department requested MONY to furnish it with New York's Franchise Tax Form CT 33, which would reflect the calculation of the New York tax against the substituted Illinois amounts for each of the years under audit. On April 12, 1984, MONY complied. However, the plaintiff objected to the application of the retaliatory tax against its experience "[u]nless or until the Insurance Department can establish that Illinois domiciled insurers are more heavily burdened by the New York tax formula than they would be under Illinois law." The Department responded by submitting a letter and invoice for the retaliatory tax in 1980, stating "we feel that the State of New York, in certain instances, charges insurance companies a premium tax at the rate of 2.6% which is a rate higher than that of Illinois." Again MONY objected, on the basis of the 1981 decision of the Fourth District Appellate Court in *Minnesota Mutual Life Insurance Co. v. O'Connor* (1981), 98 Ill. App. 3d 1040, 425 N.E.2d 38, contending the Illinois retaliatory tax could only be invoked against New York insurers after a determination had been made of the impact of New York taxes on actual insurers domiciled in Illinois. Subsequently, the Department's legal staff reviewed this matter and explained that where the *Minnesota Mutual* case involved only one method utilized by a foreign State to assess privilege taxes against Illinois companies, New York employs seven or eight different methods. Therefore, the Department examines the business experience of each New York insurer to ascertain which of the New York tax computation methods is to be applied and then computes the retaliatory tax by applying the New York calculation method employed to the company's Illinois business experience for the given tax year. For this reason, some, but not all, New York companies pay a retaliatory tax, although all are subject to it.

On April 10, 1986, MONY paid the assessment under protest and thereafter commenced this action challenging the Department's interpretation of the retaliatory act. Upon cross-motions for summary judgment and after extensive briefing and oral argument, the circuit court found there was no genuine issue of material fact and entered summary judgment for the defendants. The trial court specifically found:

"The State of New York imposes a tax on Illinois insurance companies, when stripped of all its apparent complexities, of as much as 2.6 percent of gross premiums; whereas Illinois imposes a tax of not more than 2 percent of gross premiums."

The trial court's findings were entered on July 20, 1988, as a docket entry, with the special assistant Attorney General to prepare a written order. The written order was entered on July 29, 1988. On August 26, 1988, MONY filed a motion to vacate judgment and reopen the record. At the hearing on the motion, the record was reopened and MONY was allowed to file a copy of plaintiff's 1980 IL 1120 and copies of estimated 1980 privilege tax returns. Following the hearing held on October 24, 1988, the motion to vacate was denied.

■ In *Reed v. Bascon* (1988), 124 Ill. 2d 386, 393, 530 N.E.2d 417, 420, the Illinois Supreme Court recently reviewed the standards for granting summary judgments:

"Section 2—1005(c) of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c)) provides that summary judgment shall be granted 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Although summary judgment is to be encouraged as an aid in the expeditious disposition of a lawsuit (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 292), it is a drastic measure and, therefore, should be allowed only when the right of the moving party is free from doubt (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; *Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 1016). The court must construe the pleadings, depositions, admissions, exhibits, and affidavits on file strictly against the movant in determining whether a genuine issue of material fact exists. *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398."

The trial court is not obliged to enter summary judgment just because the parties file cross-motions for summary judgment alleging there exists no genuine issue of material fact. *Haberer v. Village of Sauget*

(1987), 158 Ill. App. 3d 313, 511 N.E.2d 805.

■■ In this case, the facts are undisputed. The determination by the trial court required the construction of the statutes and their application to the facts. Since the matter before the trial court could be determined as a question of law, this was a proper case in which to enter a summary judgment. See *Lewis v. Illinois Institute of Technology* (1977), 50 Ill. App. 3d 418, 365 N.E.2d 1079.

In this appeal, two issues are raised. These issues are: (1) whether, as a condition precedent to the application of the Illinois retaliatory statute to plaintiff, the laws of New York must be shown to "invariably or even generally" impose a more onerous tax burden on Illinois insurance companies than New York companies would incur under the laws of Illinois; and (2) whether under the facts of this case the uniformity section of the revenue article of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, §2) was violated.

The United States Supreme Court has reviewed constitutional challenges to a California statute which imposed a retaliatory tax on foreign insurers doing business in California when the State of incorporation of the insurer imposed higher taxes on California insurers conducting business in the foreign State than California ordinarily imposes on such other State's insurers doing business in California. The United States Supreme Court found: (1) the statute does not violate the commerce clause of the United States Constitution (U.S. Const., art. I, §8, cl. 3) because the McCarran-Ferguson Act (15 U.S.C. §1011 *et seq.* (1982)) removed the State's power to regulate and tax the insurance industry from commerce clause restrictions; (2) the privileges and immunities clause of the United States Constitution (U.S. Const., art. IV, §2) is inapplicable to corporations; and (3) the statute does not violate the fourteenth amendment prohibition against denying any person equal protection under the law since the classification is reasonable and rationally related to a legitimate State purpose, to wit: the promotion of the California insurance industry by deterring barriers to the interstate business of domestic insurers. (*Western & Southern Life Insurance Corp. v. State Board of Equalization* (1981), 451 U.S. 648, 68 L. Ed. 2d 514, 101 S. Ct. 2070.) Of course, plaintiff's constitutional challenge to the Illinois statute comes under the uniformity clause of the revenue article of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, §2), which states:

> "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly."

Article 9, section 1, of the Illinois Constitution of 1870 also re-

quired privilege taxes to be uniform as to the classes on which they operated. (See *Raymond v. Hartford Fire Insurance Co.* (1902), 196 Ill. 329, 63 N.E. 745.) The class upon which the retaliatory statute operates is insurers of foreign States whose laws require companies of this State to pay higher taxes than foreign companies would pay in Illinois. (*Home Insurance Co. v. Swigert* (1882), 104 Ill. 653.) In *Home Insurance*, the Illinois retaliatory statute then in effect (1869 Ill. Laws 209, 227-28 (§29)) was held constitutional under the uniformity clause of the Illinois Constitution of 1870, and plaintiff has not brought any good reason to our attention which would alter that result.

In any event, plaintiff does not so much complain that the statute is unconstitutional as that the application of the statute to plaintiff in this case is unconstitutional because the tax is not applied uniformly to the class. However, this constitutional question need not be reached because of the decision on the remaining issue, which does not involve a constitutional question. See *Durkin v. Hey* (1941), 376 Ill. 292, 33 N.E.2d 463.

■ The retaliatory statute (Ill. Rev. Stat. 1987, ch. 73, par. 1056), within the context of this case, may be paraphrased this way: when the laws of New York require Illinois insurance companies to pay greater taxes "in the aggregate" than the laws of Illinois impose on companies from New York, then the tax laws of New York will be applied by Illinois to insurance companies from New York which are doing business in Illinois. The purpose of this statute is to promote the interstate business of Illinois insurance companies by preventing other States from burdening Illinois insurers with excessive taxes. (*Trinity Universal Insurance Co. v. O'Connor* (1983), 113 Ill. App. 3d 560, 447 N.E.2d 937.) In short, the objective of the statute is to promote uniform taxation (*Metropolitan Life Insurance Co. v. Washburn* (1986), 112 Ill. 2d 486, 493 N.E.2d 1071), and this is accomplished by placing the same restrictions on insurance companies from other States as those other States place on Illinois insurance companies. (*Germania Insurance Co. v. Swigert* (1889), 128 Ill. 237, 21 N.E. 530.) Nevertheless, the retaliatory statute is penal in nature and therefore must be narrowly construed. *Minnesota Mutual Life Insurance Co. v. O'Connor* (1981), 98 Ill. App. 3d 1040, 425 N.E.2d 38.

The ultimate question in this case is whether the Department complied with this court's *Minnesota Mutual* decision in assessing the retaliatory tax against plaintiff. The *Minnesota Mutual* case makes it clear that the focus of section 444 is not on the annual fluctuation of one company's business, but on the laws of the foreign State and the

impact of those laws to Illinois companies doing business in the other State. In *Minnesota Mutual,* this court concluded that the Department failed to demonstrate that Minnesota's privilege tax was not "invariably or even generally" more onerous than Illinois' privilege tax.

■ Since such a tax on foreign insurers may keep Illinois insurers from conducting business in the other State, the Illinois Supreme Court has applied the retaliatory statute even in cases where no Illinois insurers are doing business in the foreign State, but where it was clear the law of the foreign State was more burdensome. (*Germania Insurance Co. v. Swigert* (1889), 128 Ill. 237, 21 N.E. 530.) In the event Illinois insurers are conducting business in the other State, it seems clear that the first step of the analysis is to determine the effect of the other State's taxation provisions on Illinois companies doing business there. Where the other State has more than one method of computing the tax of the Illinois insurers, it should be determined which of these methods was actually applied to the Illinois companies because the mere possibility of a higher tax under a foreign statute which was not actually applied to Illinois insurers cannot form the basis for assessing a retaliatory tax. *Massachusetts Mutual Life Insurance Co. v. Parkinson* (1953), 414 Ill. 120, 110 N.E.2d 256.

■ Here, the Department incorrectly assessed the retaliatory tax. It took the plaintiff's business experience in 1980, calculated the tax based on Illinois and New York formulas, determined the New York tax was higher, and demanded the difference. There is no evidence Illinois companies doing business in New York were actually being taxed at a greater rate than they would have been under the Illinois tax laws, although the possibility exists. The fact the plaintiff's 1981 and 1982 business experience did not result in the imposition of the retaliatory tax indicates that the New York tax does not invariably, or even generally, result in a more onerous tax. Moreover, in response to interrogatories, defendants disclosed the New York insurance companies doing business in Illinois which paid a retaliatory tax in Illinois for 1979-84, inclusive. Of the 118 companies, only 40 paid a retaliatory tax during this six-year span. Thirty-one of these companies paid the tax for only one or two years. On the other extreme, only two companies paid for each of the six years and one company for five of the six years.

The record does not disclose the defendants ever surveyed Illinois insurance companies doing business in New York to determine their New York tax experience. Instead, the Department and the trial court compared statutory tax provisions and concluded that because it was

*possible* Illinois corporations could be taxed at a higher rate in New York than they would be in Illinois, then the New York rates should apply to plaintiff. Defendant's brief summarized the steps used to determine the amount of the retaliatory tax as follows: (1) the total Illinois taxes and fees on foreign corporations are calculated; (2) the tax is calculated on the subject company's business based on the laws of the jurisdiction under whose laws the company is organized; and (3) if the tax would be higher under the laws of the other jurisdiction, then a retaliatory tax is imposed. Defendants concede that, because of the complexity of the New York tax law, it is impossible to determine whether New York taxes are more onerous than Illinois taxes merely from a comparison of the statutes. It is for this reason that the defendants applied the tax laws on a company-by-company basis in order to determine the total aggregate taxes of each State based on the business experience of that company in any given year.

The Illinois privilege tax on foreign insurers is 2% of net taxable premium income (plus the retaliatory tax if applicable). Net taxable premium income is defined as gross taxable premium income less (a) premium returned during preceding calendar year, and (b) dividends paid in cash, except for deferred payments on maturing life insurance policies, which are applied to reduce the premium or left to accumulate to the credit of policyholder or annuitant, but not if used to purchase paid-up insurance or to shorten the premium paying period. There are also $200 in filing fees. (Ill. Rev. Stat. 1987, ch. 73, par. 1021.) Any income tax paid to Illinois is credited against the privilege tax, but defendants explained in order to give full credit to foreign corporations for all taxes paid in Illinois, this credit is not applied as a reduction for retaliatory tax calculations.

By comparison, New York's franchise tax seems a great deal more complicated. In New York, every domestic insurance corporation and foreign insurance corporation doing business in New York must pay a franchise tax. (N.Y. Tax Law §1501(a) (McKinney 1987).) The tax imposed is calculated in one of four methods, whichever yields the greater tax: (1) 9% of the portion of the company's entire net income allocated within New York; (2) 1.6 mill for each dollar of total business and capital allocated within New York; (3) 9% on 30% of the entire net income, plus salaries and other compensation paid to elected or appointed officers and to every shareholder owning more than 5% of issued capital stock, less $15,000 and any net loss for the year; or (4) $125. To the greatest of the above amounts is added .8 mill for each dollar of subsidiary capital allocated within New York. N.Y. Tax Law §1502 (McKinney 1987).

Section 1510(b) of the New York Tax Law applies an additional privilege tax on domestic and foreign life insurance companies of 1% on all gross direct premiums, less return premiums thereon. (N.Y. Tax Law §1510(b) (McKinney 1987).) Direct premiums generally include all payments received as consideration on insurance contracts, except annuity contracts (N.Y. Tax Law §1510(c)(1) (McKinney 1987)), and gross direct premiums specifically exclude premiums on: (1) some forms of group health insurance for persons aged 65 and over; and (2) with regard to goods in transit, war risks, marine builder's risks, and risks of navigation, transit, or transportation. (N.Y. Tax Law §1510(c)(2) (McKinney 1987); N.Y. Ins. Law §4236 (McKinney 1985).) However, if annuity premiums or the premiums excluded by section 1510(c)(2) constitute more than 95% of the premiums received by an insurance corporation, then these otherwise exempted amounts are includible in the calculation of the privilege tax. (N.Y. Tax Law §1505(b) (McKinney 1987).) After calculating gross premiums less returns, the taxpayer is also allowed to deduct: (1) premiums, less returns, for reinsurance from insurers authorized to transact business in New York; and (2) dividends, not including deferred dividends paid in cash on maturing policies or cash surrender values. N.Y. Tax Law §1510(c)(3)(A), (c)(3)(B) (McKinney 1987).

Section 1503 defines entire net income. This statute starts with taxable income, and then lists several pages of items which are specifically includable, excludable, and deductible. (N.Y. Tax Law §1503 (McKinney 1987).) The maximum combined tax rate for franchise and privilege taxes under the laws of New York is 2.6%. N.Y. Tax Law §1505(a) (McKinney 1987).

As defendants suggest, an Illinois insurance company doing business in New York would have a varied New York tax experience based on the business experience of that company in any given year. Since no Illinois company doing business in New York will have the exact same business experience as a New York company doing business in Illinois, defendants argue the only way they can determine if the established tax is appropriate is to compare the New York and Illinois taxes on the business experience of the subject company. However, that is not what the statute contemplates.

Strictly construed, the statute requires a State-by-State comparison. If New York law is determined to be more onerous than Illinois law, then New York law is applied to all New York companies. Defendants may not pick and choose which law to apply. Nevertheless, defendants' procedures do not apparently allow a New York company doing business in Illinois to pay only the equivalent New York

tax where that tax would be less than would be imposed under Illinois law.

■ Although the New York tax imposed on Illinois insurance companies doing business in New York could be greater than the Illinois tax on foreign insurance companies, it could also be less. Therefore, under the holding in *Minnesota Mutual*, the defendants have not met the prerequisite for imposing a retaliatory tax. Defendants have not demonstrated the New York taxes are invariably, or even generally, more onerous than Illinois tax on foreign insurers.

Accordingly, the judgment of the circuit court of Sangamon County is reversed, and the cause is remanded to the circuit court for entry of summary judgment in favor of plaintiff and such other appropriate relief as is necessary to protect plaintiff's interests.

Reversed and remanded with directions.

McCULLOUGH, P.J., and KNECHT, J., concur.