THE PEOPLE *ex rel.* ADAMS ELECTRICAL COOPERATIVE, Plaintiff-Appellant, v. THE VILLAGE OF CAMP POINT *et al.*, Defendants-Appellees (Nancy Law Anderson, Plaintiff).

Fourth District   No. 4—96—0548

Opinion filed January 17, 1997.

Karen L. Kendall, Timothy L. Bertschy, Craig L. Unrath (argued), and Cheryl G. Bluth, all of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Thomas J. Ortbal (argued), of Hutmacher, Rapp & Ortbal, P.C., of Quincy, for appellee Village of Camp Point.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Adams Electrical Cooperative (Co-op) appeals from a summary judgment entered in the circuit court of Adams County in favor of defendants Village of Camp Point (Village); George E. Schrage III, county clerk of Adams County; and Howard Wear, Jr., county treasurer and collector of Adams County. Co-op sought a declaratory judgment that the real estate that was the subject of this litigation was not now and had never been located within the territorial limits of the Village and (2) in a *quo warranto* action, asserted that the Village was exercising power and authority by assessing *ad valorem* real estate property taxes over the subject property without a legally sufficient annexation ordinance.

The issues are whether (1) any genuine issue of material fact remains in this case concerning the real estate property taxing authority such that summary judgment was improperly granted in favor of the Village; and (2) even if no genuine issue of material fact remained, should summary judgment have been granted in favor of taxpayer Co-op instead of the Village. We affirm.

On April 14, 1993, Co-op and Nancy Law Anderson filed (1) an application for leave of court to file proceeding in *quo warranto instanter*, and (2) a complaint for declaratory judgment and other relief. On April 23, 1993, the trial court granted the application for leave to file a complaint in *quo warranto instanter*. Pursuant to the stipulation and agreement of the parties, the petition was voluntarily dismissed as to Anderson on July 25, 1994.

The complaint alleged that on March 11, 1992, the Co-op was notified by the Village that the following described property, owned by Co-op, (1) was within the Village's territorial limits, (2) had not been assessed for real estate taxes under the Village's levy, and (3) records were being corrected to reflect the inclusion of the property within the Village's territorial boundaries:

> "All that part of the Southeast Quarter of Section Twenty-six (26), bounded and described as follows, to wit: Beginning at a stone at the Southeast corner of said Quarter Section, running

thence North to a stone at the Northeast corner of said Quarter Section, thence West twenty-two hundred seventy-four and five tenths (2274.5) feet, more or less, thence South two hundred ninety-five (295) feet, more or less, to the right-of-way of the Wabash Railway Company, thence Southeasterly along said right-of-way two hundred twenty-nine and six tenths (229.6) feet, more or less, thence South to the South line of said Section, and thence East Twenty hundred eighty-one (2081) feet, more or less, to the place of beginning, except that part now occupied as a State Highway Route 31 and Federal 24, all in Township One (1) North of the Base Line, and in Range Six (6) West of the Fourth Principal Meridian, situated in the County of Adams, in the State of Illinois."

The Co-op challenged the Village's authority to so act.

After the Village filed an answer to the complaint in this case, the Co-op filed a motion for summary judgment. In its response to the motion for summary judgment, the Village requested the entry of summary judgment in its favor. The supporting documents for these pleadings will be discussed as necessary later in this disposition.

The trial court entered summary judgment in favor of the Village. In its order, the trial court found there was no genuine issue of material fact, and any factual issues that did exist were unimportant to the disposition of this case. The trial court found, as a matter of law, the Village's ordinance No. 1 included the subject real estate.

"Merely because the parties filed cross-motions for summary judgment alleging that no genuine issue of material fact existed does not obligate the trial court to grant summary judgment. *Mutual Life Insurance Co. v. Washburn* (1989), 183 Ill. App. 3d 978, 981, 539 N.E.2d 1278, 1280, *rev'd on other grounds* (1990), 137 Ill. 2d 312, 561 N.E.2d 29.

'The purpose of summary judgment is to determine whether there are any genuine issues of material fact (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240), and summary judgment should be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c)). Although summary judgment is an expeditious method of disposing of a lawsuit, it should only be allowed when the right of the moving party is clear and free from doubt. (*Purtill*, 111 Ill. 2d at 240.)' (*Colvin v. Hobart Brothers* (1993), 156 Ill. 2d 166, 169-70.)

On appeal, the reviewing court's role is to consider anew the facts and law relating to the case and determine whether the trial court was correct in finding that no genuine issue of material fact existed, and if none exists, whether the judgment was correctly entered as a matter of law. *University of Illinois v. Continental Casualty Co.* (1992), 234 Ill. App. 3d 340, 343, 599 N.E.2d 1338, 1341." *Kellner v. Bartman*, 250 Ill. App. 3d 1030, 1033, 620 N.E.2d 607, 609 (1993).

Where the record presents a question of law only, summary judgment is an appropriate remedy. *Marshall v. City of Centralia*, 143 Ill. 2d 1, 6, 570 N.E.2d 315, 317 (1991); *Westwood Forum, Inc. v. City of Springfield*, 261 Ill. App. 3d 911, 916, 634 N.E.2d 1154, 1158 (1994).

In its complaint, Co-op admitted the Village is a municipality organized under "An Act to incorporate the town of Camp Point, Adams [C]ounty" (1857 Act) (1857 Ill. Laws 539). Co-op also admitted that on February 13, 1857, the Village's board of trustees adopted ordinance No. 1, entitled "An Ordinance Defining the Limits of the Village of Camp Point, Providing for Elections and Organization of the Board of Trustees." This dispute arises because of the alleged absence of any official records of ordinance No. 1.

This entire case centers on which documentary evidence submitted by the parties is the best evidence of the original contents of ordinance No. 1. That is a question of law. Even if a question of fact might arguably exist because the trier of fact might accord different weight to the documentary evidence, the parties have not suggested any other evidence would be presented at trial. This case presents a question of law since these exhibits are all the facts that will be presented at trial and only one inference can be reasonably drawn from them. *Jacobson v. General Finance Corp.*, 227 Ill. App. 3d 1089, 1093, 592 N.E.2d 1121, 1124 (1992).

Section 2 of the 1857 Act incorporating the Village stated:

> "The boundaries of said corporation shall be those established by the first ordinances passed by the present board of trustees of said town. Said ordinances, together with all other ordinances passed by said board, are hereby legalized, and may be read in evidence in all courts of law or equity in this state without proof." 1857 Ill. Laws 539.

According to Co-op, the only existing evidence of the Village's boundaries between 1857 and 1874 was an 1872 map (Co-op exhibit No. 7) showing the original town and various additions, none of which included the subject property. A footnote in Co-op's memorandum in support of summary judgment indicated the map was included in the 1872 plat book of Adams County on file in the Illinois State Library. The map was drawn by W.P. Campbell. Co-op exhibit No. 23 was a

photocopy of a plat map of the Village by S. Farlow in 1901, which does not include the subject property within the Village.

Also included in the record are two affidavits from Anne Craig, coordinator of public services at the Illinois State Library in Springfield, Illinois, indicating that maps in the possession of Co-op's attorney were produced from (1) the Atlas Map of Adams County, Illinois, Compiled, Drawn and Published from Personal Examinations and Surveys by Andreas, Lyter & Company, Davenport, Iowa, Andreas, Lyter & Company, 1872 (Call No.: FOLI0912.773 ADAM2); and (2) Standard Atlas of Adams County, Illinois: Including a Plat Book of the Villages, Cities and Townships of the County *** Patrons Directory, Reference Business Directory *** Chicago: G.A. Ogle, 1901 (Call No.: FOLI0912.773 ADAM3). It is Co-op's position that these maps show the subject land as belonging to "E. Garrett" and outside the municipal limits.

"An Act to provide for annexing and excluding territory to and from cities, towns and villages, and to unite cities, towns and villages" (Annexation Act) was enacted effective July 1, 1872. 1871 Ill. Laws 264. On February 7, 1874, a referendum was passed to organize the Village under the general municipal laws of the State of Illinois for the organization of cities and villages. Section 2 of the Village's revised ordinances (passed May 4, 1874) provided that all ordinances passed by the board of the Village shall be in pursuance of and consistent with the statutes relating to the incorporation of cities and villages. The Village concedes that no annexation of the subject property in accordance with the Annexation Act has occurred since 1874.

In support of its response to the motion for summary judgment, the Village submitted as an exhibit a handwritten, certified copy of ordinance No. 1 made by Robert F. Humble, Village clerk, on December 16, 1936. This was based on the ordinance of the Village as revised in June 1913 and in force from September 5, 1913. The subject property was included within the Village as described by section 1 of ordinance No. 1 of the 1913 revision. Village ordinances 33, 34, and 35, passed and approved on December 7, 1900, were ordinances of disconnection of real estate from the Village which do not include the subject property. Ordinance No. XIX annexed Bailey Park (part of the southwest quarter of the southwest quarter of section 23). That ordinance was passed on April 1, 1904. Also submitted were (1) an order of the circuit court of Adams County in Heidbreder v. Village of Camp Point, No. 8859 (Cir. Ct. Adams Co.), entered on October 7, 1939, disconnecting from the Village by default land owned by Walter Heidbreder and legally described therein, and (2) the October 19, 1945, order of the circuit court of Adams County disconnecting land

of Ivan and Helen Oitker (Oitker v. Village of Camp Point, No. 174 (Cir. Ct. Adams Co.)). The parties do not argue that these orders directly impact the subject property.

The Village also submitted a group of documents, including the affidavit of John Basinger, a licensed professional surveyor who mapped the corporate boundaries of the Village as described in ordinance No. 1, recorded with the Adams County recorder's office on December 21, 1936, after considering the annexations; orders of detachment; and ordinances of disconnection. In Basinger's opinion, that portion of the Co-op property lying within the west half of the southeast quarter of section 26 (the subject property) was within the Village boundaries described in ordinance No. 1. Basinger further stated that Co-op exhibit No. 23 was a map showing subdivisions, lots, and parcels and Co-op exhibit Nos. 7 and 23 "do not contain or purport to contain or describe or include indicators or legends of the corporate boundaries of the municipality, but said maps merely designate or indicate subdivision of property into lots or parcels." In his opinion, unsubdivided properties are included within corporate boundaries, and it is unreasonable to conclude that the subdivided parcels in lots shown on the maps submitted by Co-op were synonymous with the Village corporate boundaries.

Village exhibit No. 9 was the affidavit of Carol Means, deputy treasurer of Adams County, certifying the Village tax records of 1918 assessed property owned by A.A. Garrett, being the "$W\frac{1}{2}$ SE Sec. 26 (74.38 acres) (ex. 3 a. R.R.) & (Ex. 2 31/50 a. NW cor)." She examined records from 1898 through 1918 and found this land to be assessed by the Village during those years.

There are four major areas of contention between the parties: (1) the admissibility of or weight to be accorded the maps from the Illinois State Library offered by Co-op; (2) the admissibility or weight to be accorded later recorded descriptions of ordinance No. 1 to establish what ordinance No. 1 originally said; (3) the evidentiary value of the tax records offered by the Village; and (4) the accuracy of the recent survey by Basinger commissioned by the Village.

■ In a *quo warranto* action, a plaintiff is not required to allege unlawful acts, but only that defendant exercised a claimed right without authority. The defendant bears the burden of justifying its action. *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 36, 585 N.E.2d 51, 67 (1991); *People ex rel. Ray v. Lewistown Community High School District No. 241*, 388 Ill. 78, 86, 57 N.E.2d 486, 491 (1944). The Village has met its burden of proof.

Submitted into evidence was a certified copy of a recorded ordinance No. 1 although it was recorded much later than its origi-

nal enactment in 1857. In addition, the Village ordinances revised in 1913 were admitted into evidence. Co-op does not challenge the authenticity of these documents, but argues they are not to be relied on to definitively determine the original content of ordinance No. 1.

■ When a public record is lost or destroyed, it may be proved by secondary evidence, including oral testimony. *Forsyth v. Vehmeyer*, 176 Ill. 359, 361, 52 N.E. 55, 56 (1898). If a duplicate of a document is available, it must be used in preference to parol testimony as to the original document's contents. *Wilson v. South Park Commissioners*, 70 Ill. 46, 51-52 (1873). Here, there does not appear to have been a duplicate, other than the republications of ordinance No. 1 throughout the years. Unfortunately, the oldest such republication in evidence occurred in 1913. That republication of ordinance No. 1 in 1913 included in printed book or pamphlet form was admissible as *prima facie* evidence of the existence of that ordinance. 65 ILCS 5/1—2—6 (West 1994); *Village of Riverwoods v. Untermyer*, 54 Ill. App. 3d 816, 823, 369 N.E.2d 1385, 1391 (1977). The Village has met its burden of proof and the burden shifted to Co-op. To overcome the *prima facie* proof made by introducing a book of ordinances into evidence, the opponent must show that the ordinance was never, in fact, passed (*Chicago & Alton Ry. Co. v. Wilson*, 225 Ill. 50, 55, 80 N.E. 56, 58 (1906)), or that the ordinance was beyond municipal powers (*Village of Bourbonnais v. Herbert*, 86 Ill. App. 2d 367, 370, 229 N.E.2d 574, 576-77 (1967)).

Co-op argues that the 1913 version is inherently inaccurate because it does not reflect the disconnection under ordinance 35 in December 7, 1900, and includes additions to the Village, as shown by subdivision plats, which occurred after 1857. It is conceded by Co-op that the Act of 1857 allowed the Village board of trustees to define the territorial limits of the Village, and the disconnections and additions do not directly affect the subject property's inclusion in the Village's territory limit. To this end, Co-op makes the assumption, but provides no authority, that the "additions" were actually territory added to the original town limits, rather than being new subdivisions of previously unsubdivided areas within the town's original territory. The best that can be said is Co-op does not know how its property got into the Village.

■ The parties argue in their briefs whether the maps submitted by Co-op are admissible into evidence. There is a hearsay exception for 30-year-old documents affecting title to real estate. *Reuter v. Stuckart*, 181 Ill. 529, 537-38, 54 N.E. 1014, 1017 (1899); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.17, at 751 (6th ed. 1994). Maps may be determined to be ancient documents. 32A C.J.S. *Evidence* § 746 (1964).

"A writing or recording affecting real property may be authenticated by evidence that the writing or recording (1) is in such condition as to create no suspicion concerning its authenticity, (2) was in a place where it, if authentic, would likely be, and (3) has been in existence 30 years or more at the time it is offered." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 901.9, at 814 (6th ed. 1994).

"Maps or plats of land, or tracings thereof, especially when referred to in deeds, are admissible in evidence to illustrate other testimony in the case and for the purpose of throwing light on the location of the land in controversy and the boundaries thereof. However, such maps, plats, and tracings are not legal proof or evidence of title or boundaries, but only evidence of the physical objects and points on the land and the relations between them in distances and directions. They are admissible in evidence in connection with the testimony of witnesses to explain and elucidate such testimony. It is within the discretion of the trial judge to reject the map or plat if it appears to him to be not of help to the jury, or to add nothing by way of illustration to the witness' testimony. 29 Am. Jur 2d, Evidence § 905." R. Hunter, Trial Handbook for Illinois Lawyers—Civil § 41.19, at 531 (6th ed. 1989).

In annotations to the discussion of the admissibility of ancient documents, Hunter's handbook adds:

"An ancient survey may not be admitted as an ancient document unless it was made by competent authority, recorded or accepted as a public document and produced from proper custody. 46 ALR2d 1318.

An ancient map which was made at the direction of a private person and which has no official authorization or recognition may not be admitted as an ancient document. 46 ALR2d 1318." R. Hunter, Trial Handbook for Illinois Lawyers—Civil § 54.23, at 763 n.5 (5th ed. 1983).

As noted in Cleary, in discussing the use of maps as demonstrative evidence, there is a line of demarcation between using the map to explain testimony and reducing the testimony to a graphic form so as to confer on it disproportionate emphasis. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 401.7 (6th ed. 1994). In this case, the accuracy, rather than the authenticity, of the maps is of central importance because Co-op would use them in lieu of any testimony. The use of such ancient maps as substantive evidence depends on whether they are official or unofficial in origin. A 30-year-old map, found in proper custody, authorized and recognized as an official document, and free on its face of suspicion, may be admitted into evidence as an ancient document to prove the location of a

boundary line. Annotation, *Admissibility in Evidence of Ancient Maps and the Like*, 46 A.L.R.2d 1318, 1322 (1956) (hereinafter 46 A.L.R.2d). Where, as here, there is no evidence the ancient maps were commissioned under official authority, there may be evidence that they were, in effect, ratified as an official document by reason of having been recorded and relied on by the general public in ascertaining property boundaries. 46 A.L.R.2d at 1326, citing *Oxford v. Willoughby*, 181 N.Y. 155, 73 N.E. 677 (1905). However, unofficial maps, though ancient, are not admissible in evidence. 46 A.L.R.2d at 1333.

■ Simply because a map is old and maintained in a library does not guarantee the accuracy of the information illustrated on the map. It makes no difference that these maps submitted by Co-op were maintained in a library or some other such repository that would accumulate these types of documents because that does not make them official. See 46 A.L.R.2d at 1335, citing *Mercer v. Denne*, 2 Ch. 534 (1904). These maps were not recorded in the recorder of deeds' office, which is the office responsible for maintaining records relating to real estate. There is nothing in this record to show these maps have been relied on with regard to establishing title or boundaries to real estate.

Even if the maps submitted by Co-op are considered ancient documents, ancient documents that do not fit under the public records exception to the hearsay rule are admitted as *prima facie* evidence of their contents and are not conclusive without evidence tending to substantiate their correctness. 32A C.J.S. *Evidence* § 767, at 70-72 (1964). See generally *Lombard Park District v. Chicago Title & Trust Co.*, 105 Ill. App. 2d 371, 378-81, 245 N.E.2d 298, 301-03 (1969) (discussing the admissibility of a map under the public records exception to the hearsay rule). The ancient document rule only dispenses with the need to present testimony to authenticate the document. It does not make it admissible as substantive or illustrative evidence. *Lackey v. Tripp*, 63 N.C. App. 765, 768, 306 S.E.2d 464, 466 (1983). The admissibility of such evidence remains a matter within the trial court's discretion.

Basinger's affidavit indicated the maps only showed the subdivided areas within the Village boundaries and that unsubdivided areas within municipal boundaries would often not be shown on such maps. Although the summary judgment statute allows for the filing of affidavits and counteraffidavits (735 ILCS 5/2—1005 (West 1994)), Co-op filed no affidavit stating under what authority the maps were originally made. Nor did Co-op file a counteraffidavit that contradicted Basinger's affidavit in support of its reply to the Village's response to the motion for summary judgment.

In this case, as to the maps, the trial court's order of February 16, 1996, stated:

"The maps, plats and documents submitted by [Co-op] and particularly the maps submitted as [Co-op's] Exhibits 7 and 23 are not entitled to any binding consideration by the Court, as they are not official plats, but merely maps which purport to be reflective of subdivisions within the Village limits. The documents submitted on behalf of the [Co-op] do not support a conclusion that the property of [Co-op] in question is outside the corporate limits of the Village of Camp Point."

This was a correct determination.

As to the tax records submitted into evidence, they do not go back to 1857 and establish only that the property had been taxed by the Village in the past. We recognize that, in itself, does not establish the fact the Village had authority to tax in 1918. However, the inconclusiveness of these tax records does not establish that the summary judgment was improper.

■ The final evidentiary issue concerns the adequacy of the plat of survey by Basinger. Co-op argues that it is out of scale. Village says this argument is improperly raised for the first time on appeal. *Anderson "Safeway" Guard Rail Corp. v. Champaign Asphalt Co.*, 131 Ill. App. 2d 924, 929, 266 N.E.2d 414, 418-19 (1971). The record in this case contains no transcript of the arguments of counsel on the motion for summary judgment, and this argument was not included in Co-op's reply to the Village's response to the motion for summary judgment. More important, Co-op fails to demonstrate how the imperfection in scale, if any, affected Basinger's opinion that the subject property was within Village limits.

The testimony of the surveyor along with a plat is sufficient to permit the admission of the plat into evidence. *Cammers v. Marion Cablevision*, 26 Ill. App. 3d 176, 178-79, 325 N.E.2d 62, 64 (1975), *aff'd*, 64 Ill. 2d 97, 354 N.E.2d 353 (1976). Here, unlike Co-op's maps, which were submitted as substantive evidence without supporting testimony of their accuracy, the plat of Basinger was demonstrative evidence supporting his affidavit. Therefore, this does not create a question of fact sufficient to warrant overturning the summary judgment.

The judgment of the circuit court of Adams County is affirmed.

Affirmed.

KNECHT and GREEN, JJ., concur.