(No. 68884.—

THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellee, v. JOHN WASHBURN, Director of Insurance of the State of Illinois, *et al.*, Appellants.

*Opinion filed July 3, 1990.—Rehearing denied October 1, 1990.*

Neil F. Hartigan, Attorney General, Robert J. Ruiz, Solicitor General, and Pfeifer & Kelty, P.C. (Robert E. Wagner, Special Assistant Attorney General, of counsel), all of Springfield, for appellants.

William S. Hanley and Patrick V. Reilly, of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, The Mutual Life Insurance Company of New York, brought the present declaratory judgment action in the circuit court of Sangamon County pursuant to the State Officers and Employees Money Disposition

Act (Ill. Rev. Stat. 1987, ch. 127, par. 170 *et seq.*). The plaintiff contests the assessment by the Illinois Department of Insurance (the Department) of a retaliatory tax (see Ill. Rev. Stat. 1987, ch. 73, par. 1056) in the amount of $234,401.12, plus interest, for the calendar year 1980. The trial judge found the assessment valid and entered summary judgment in favor of the defendants, John Washburn, Director of Insurance of the State of Illinois (the Director), and James Donnewald, State Treasurer of the State of Illinois (the Treasurer). The appellate court reversed the judgment of the trial court, concluding that section 444 of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 1056) does not authorize the methodology used by the Department in calculating the plaintiff's retaliatory tax. (183 Ill. App. 3d 978.) We allowed the defendants' petition for leave to appeal (107 Ill. 2d R. 315).

A foreign insurance company doing business in Illinois is obligated to pay the State of Illinois a tax in the amount of 2% of net taxable premium income written on Illinois risks, as well as certain other fees not relevant here, for the privilege of doing business in this State. (Ill. Rev. Stat. 1987, ch. 73, par. 1021.) In addition, each foreign insurer is potentially subject to the payment of what has been termed a "retaliatory tax" under section 444 of the Illinois Insurance Code (the retaliatory statute) (Ill. Rev. Stat. 1987, ch. 73, par. 1056). Section 444 provides in relevant part:

> "Whenever the existing or future laws of any other state or country shall require of companies incorporated or organized under the laws of this State as a condition precedent to their doing business in such other state or country, *** the payment of penalties, fees, charges or taxes greater than the penalties, fees, charges or taxes required in the aggregate for like purposes by this Code or any other law of this State, *** then such laws *** of

said other state or country shall apply to companies incorporated or organized under the laws of such state or country doing business in this State, and all such companies *** shall be required to make deposits, pay penalties, fees, charges and taxes, in amounts equal to those required in the aggregate for like purposes of Illinois companies doing business in such state or country ***." Ill. Rev. Stat. 1987, ch. 73, par. 1056.

The Department administers section 444 by requiring all foreign insurers to pay the "penalties, fees, charges or taxes" imposed by Illinois insurance tax provisions apart from the retaliatory tax. The Department then collects as a retaliatory tax any excess over the total of those amounts which would have been due from a hypothetical Illinois company with a similar business experience in the company's home jurisdiction. If the hypothetical Illinois insurer would have been required to pay an equal or lesser amount than the amount assessed the foreign insurer under Illinois insurance tax provisions, then no retaliatory tax is levied.

Plaintiff is a life insurance company organized under the laws of the State of New York and authorized to do business in the State of Illinois. In early 1984, the Department conducted an audit of plaintiff for the years 1980 through 1982. New York statutes during that period contained a complex taxation system that imposed a two-tiered tax on foreign insurers. (The New York tax law was modified in 1982, but because the Department does not claim that plaintiff owes retaliatory tax under the law as modified, we need not discuss the modifications.) First, New York imposed a premium tax on both foreign and domestic companies of 1% on gross premiums written in New York. (N.Y. Tax Law §1510(c) (McKinney 1980).) Second, it added an additional two-component "franchise" tax. The first component consisted of the highest of four elements: (1) 9% of the taxpayer's

net income allocated within New York; (2) 1.6 mills for each dollar of the taxpayer's total business and investment capital allocated within New York; (3) 9% on 30% of the taxpayer's net income in New York plus salaries and other compensation paid to the taxpayer's officers and stockholders owning in excess of 5% of its issued capital stock, minus $15,000 and any net loss for the reported year; or (4) $125. (N.Y. Tax Law §1502 (McKinney 1980).) The New York law then added to the highest of the four elements a 0.8 mill levy for each dollar of subsidiary capital allocated within the State. However, a company could not be assessed a combined franchise and privilege tax greater than 2.6% of the insurer's gross premiums. N.Y. Tax Law §1505(a) (McKinney 1980).

The plaintiff's initial retaliatory tax statements filed with the Department for the calendar years 1980, 1981 and 1982 disclosed only the 1% New York premium tax. The statement did not calculate into the possible retaliatory tax the second tier of the New York taxing scheme. During its audit, the Department requested that plaintiff furnish the Department with New York's Franchise Tax Form CT33. The Department instructed plaintiff to complete the form to reflect what the total New York tax would have been, taking into account the second tier of the taxation scheme, had plaintiff conducted its Illinois business as a foreign insurance company under New York law during each of the years under audit.

The Director reviewed the information provided by the plaintiff in the completed New York franchise tax forms and assessed plaintiff a net retaliatory tax of $234,401.12, plus interest on the past-due amount, for the calendar year 1980. No deficiency is claimed for the calendar years 1981 and 1982. On April 10, 1986, plaintiff paid to the Department $321,129.54, consisting of the $234,401.12 retaliatory tax assessed by the Depart-

ment and $86,728.42 in interest. At that time, plaintiff filed a written notice to the Director stating that the payment was made under protest. See Ill. Rev. Stat. 1987, ch. 127, pars. 170 through 172(a).

The plaintiff then brought this action in equity in the circuit court of Sangamon County on April 28, 1986. Plaintiff sought a temporary restraining order, a preliminary injunction, and a permanent injunction, each without bond, to: (1) enjoin and restrain the Treasurer from transferring the money paid by plaintiff from the protest fund to any other fund; (2) enjoin and restrain the Director from paying or depositing into any fund other than the protest fund, or disposing of in any other manner, the money paid by plaintiff; and (3) enjoin and restrain the Director and Treasurer from assessing against, imposing upon, or collecting from plaintiff any additional tax, deficiencies, interest or penalties connected with this matter and from taking any action to collect or recover any of the money paid under protest. The complaint further sought a final decree declaring the collection of the retaliatory tax unwarranted and an order to the Director and Treasurer to refund to plaintiff the money it paid under protest, plus interest.

On May 7, 1986, the trial court issued a preliminary injunction enjoining and restraining the defendants from transferring from the protest fund or paying or depositing into any other fund other than the protest fund the money paid by plaintiff. In addition, the order restrained and enjoined the defendants from assessing against, imposing upon or collecting from plaintiff any tax, deficiencies, interest or penalties as a result of the entry of the injunction.

Defendants filed with the trial court an answer to plaintiff's complaint. Plaintiff thereafter filed a motion for summary judgment, arguing that it was not subject to a retaliatory tax because New York laws are not more

burdensome than the relevant provisions of Illinois law. Plaintiff further argued that the Department's scheme of taxation violates the equal protection, due process and uniformity clauses of the Federal and State Constitutions.

Defendants filed a cross-motion for summary judgment, alleging that on its face, New York law is more burdensome than Illinois' insurance tax law. Defendants also alleged that in applying New York law the Department must evaluate the individual business experience of the company subject to retaliation to determine which New York provision is applicable to the company. Defendants further argued that the Department's method of applying the retaliatory statute to New York companies does not violate the constitutional rights of plaintiff.

At a hearing on July 20, 1988, the trial judge found that there were no issues of material fact. In a written order dated July 29, 1988, the trial judge denied plaintiff's motion and granted defendants' motion for summary judgment. The judge stated: "The State of New York imposes a tax on Illinois insurance companies, when stripped of all its apparent complexities, of as much as 2.6 percent of gross premiums; whereas Illinois imposes a tax of not more than 2 percent of gross premiums."

Plaintiff moved the trial court to vacate its judgment and reopen the record, and subsequently made a motion to supplement the record with copies of its 1980 IL 1120 tax form and of its estimated 1980 privilege tax returns. The trial court granted plaintiff leave to supplement the record and denied plaintiff's motion to vacate the judgment.

Plaintiff appealed the judgment of the trial court. Plaintiff argued that the retaliatory statute required a showing by the Department that the laws of New York

invariably or even generally impose a more onerous tax burden on Illinois insurance companies than New York insurance companies would incur under the laws of Illinois before assessing the retaliatory tax. Plaintiff further contended that the retaliatory statute, as interpreted and applied by the Department, violates the uniformity provision contained in the revenue article of the Illinois Constitution (Ill. Const. 1970, art. IX, §2).

The appellate court reversed the judgment of the trial court. After reviewing its earlier decision in *Minnesota Mutual Life Insurance Co. v. O'Connor* (1981), 98 Ill. App. 3d 1040, which invalidated a retaliatory tax assessed by the Department on a Minnesota insurer, the appellate court determined that the methodology used by the Department to assess plaintiff's retaliatory tax was not authorized by the retaliatory statute. (183 Ill. App. 3d at 984.) The appellate court concluded that the retaliatory statute requires a State-by-State comparison to determine whether the privilege taxes imposed by the foreign provision on Illinois companies doing business there are more onerous than the privilege taxes imposed by Illinois on companies domiciled in the foreign State and doing business in Illinois. (183 Ill. App. 3d at 986.) The appellate court found that the Department did not determine the effect of the New York tax statutes on Illinois companies doing business in New York before assessing plaintiff a retaliatory tax. It then concluded that the Department did not therefore meet its burden of demonstrating that "the New York taxes are invariably, or even generally, more onerous than Illinois tax on foreign insurers." (183 Ill. App. 3d at 987.) By concluding that the retaliatory tax was unauthorized, the appellate court was not required to reach plaintiff's contention that the assessment of the retaliatory tax violated the uniformity provision of the Illinois Constitution.

Defendants appeal here the judgment of the appellate court. Defendants contend that the appellate court erred when it concluded that the Department must look to the taxes imposed on Illinois companies doing business in the foreign State and determine that the taxes of the foreign jurisdiction are invariably, or even generally, more onerous than the privilege taxes imposed by Illinois before applying a retaliatory tax. Defendants argue that the language of the retaliatory statute, prior case law from this court, and the vagaries of the New York taxing provisions require the Department to consider whether New York insurers doing business in Illinois are required to pay a retaliatory tax on a company-by-company basis.

Plaintiff attacks the methodology used by the Department to assess the retaliatory tax on three fronts. Plaintiff argues: (1) before the Department may assess a retaliatory tax on any New York insurer, the Department must determine whether New York taxes paid by Illinois companies doing business there are invariably, or even generally, more burdensome than the Illinois tax on New York insurers; (2) because the New York taxation scheme imposes a franchise tax based partially on net income, the Department must include Illinois income tax paid by New York insurers when calculating the retaliatory tax; (3) the retaliatory tax, as applied by the Department, violates the equal protection and uniformity provisions of the Illinois Constitution. For the reasons set out below, we believe that the methodology used by the Department in assessing plaintiff's retaliatory tax comports with the requirements of the retaliatory statute and hold that the retaliatory statute, as applied by the Department, is not unconstitutional for the reasons argued by plaintiff.

I

The first issue before us is whether the retaliatory

statute requires as a predicate to the Department's imposition of a retaliatory tax a showing by the Department that the New York taxes paid by insurance companies domiciled in Illinois and doing business in New York are invariably, or even generally, more onerous than the Illinois tax on New York insurers.

In *Union Central Life Insurance Co. v. Lowe* (1932), 349 Ill. 464, this court examined a challenge to the Department's practice of assessing a retaliatory tax on a company-by-company basis. There, a company domiciled in Ohio and doing business in Illinois challenged an assessment of a retaliatory tax based on the predecessor to section 444 of the Illinois Insurance Code (see Ill. Rev. Stat. 1931, ch. 73, par. 68). At that time, Ohio assessed a premium tax of 2.5% on foreign insurers, while Illinois normally assessed a premium tax of 2%. Due to the differences between the calculations of taxable income and allowable deductions, however, it was possible that an Illinois company doing business in Ohio would be assessed less tax than would a similar Ohio company doing business in Illinois. The plaintiff in *Union Central* contended that such a possibility prevented the application of the retaliatory statute. The court concluded that in every case where the rate imposed on Illinois companies by a foreign State will produce a greater tax than the rate provided by the general taxing provision of Illinois, the retaliatory tax should be applied to a similarly situated foreign company doing business in Illinois. (*Union Central*, 349 Ill. at 470-71.) It noted that "[i]t is but a simple matter of calculation to demonstrate that the Ohio rate, when applied to the facts in the case at bar, will produce a tax considerably higher than the Illinois rate would produce on the same transactions." 349 Ill. at 471.

The court in *Union Central* cited the court's earlier opinion in *Germania Insurance Co. v. Swigert* (1889),

128 Ill. 237, to demonstrate why the retaliatory statute should be applied in every case that a foreign company was brought within its provisions. In *Germania*, a Louisiana insurer challenged the assessment of the Illinois retaliatory tax because no Illinois insurer was actually doing business in Louisiana. In holding that the retaliatory statute applied to the Louisiana insurer, this court stated that it was the existence of the Louisiana law, rather than its application to Illinois insurers, that governed the retaliatory provision. The court reasoned that the higher tax imposed by Louisiana might itself have accounted for the absence of Illinois corporations doing business there. The *Germania* court therefore concluded that "it is intended that as the law of that State operates upon us, so the law of this State must operate upon them, and the same payment which our companies must make as a condition to doing business there, their companies must make as a condition to doing business here." 128 Ill. at 247.

Plaintiff claims, however, that a subsequent amendment to the retaliatory statute renders the court's holdings in *Union Central* and *Germania* irrelevant to the case before us. As plaintiff notes, Illinois adopted its first comprehensive insurance code in 1937, which included section 444 in substantially its current form. (See 1937 Ill. Laws 881-82.) The plaintiff places particular significance on the replacement of the language in the pre-1937 statute's application of the retaliatory tax "in every such case" where the foreign tax is higher than the Illinois tax, with the current language that requires "all such companies" from a State imposing a higher tax on Illinois companies to pay taxes equal to those required of Illinois companies doing business in the foreign State. The plaintiff argues that the current retaliatory statute now clearly requires as a predicate to the imposition of a retaliatory tax a broadly based State-by-State

comparison rather than the company-by-company analysis the court found appropriate in *Union Central.*

This court has previously recognized that "[a] retaliatory statute is penal in character and hence subject to the rule of strict construction. The operation of the statute must be confined to such cases as fall within its letter." (*Metropolitan Life Insurance Co. v. Boys* (1920), 296 Ill. 166, 172.) "We are not permitted to read into it words and meanings not found in the body of the act itself." (*Pacific Mutual Life Insurance Co. v. Lowe* (1933), 354 Ill. 398, 405.) Stripped of language unnecessary to the dispute before us, the retaliatory statute requires the application of the retaliatory tax "[w]henever the existing or future laws of any other state *** shall require of companies incorporated or organized under the laws of this State as a condition precedent to their doing business in such other state *** the payment of *** taxes greater than the *** taxes required in the aggregate for like purposes by this Code or any other law of this State ***." (Ill. Rev. Stat. 1987, ch. 73, par. 1056.) The provision does not state that the laws of the foreign State must require of Illinois companies the payment of taxes greater than required under Illinois law with great frequency.

New York imposed a tax on Illinois insurance companies of as much as 2.6% of gross premiums during the relevant period. Illinois imposed a tax on foreign insurance companies of not more than 2% of net taxable premium income. Although the calculation of gross premiums under New York law diverges from the calculation of net taxable premium income in Illinois, it is clear from plaintiff's 1980 business experience that New York law may require of Illinois companies the payment of taxes greater than the taxes required of New York companies in the aggregate for like purposes in Illinois. We decline to read into the provision plaintiff's interpretation that

the taxes imposed on Illinois companies by the foreign State be "on average" greater than those which are imposed by Illinois on foreign companies.

Section 409 of the Illinois Insurance Code requires that a foreign or alien insurance company, for the privilege of doing business in this State, pay a tax equal to 2% of net taxable premium income, "together with any amounts due under Section 444." (Ill. Rev. Stat. 1987, ch. 73, par. 1021.) We believe it clear that the retaliatory statute, when read together with section 409, does not require that the Department determine that the law of the foreign State "invariably, or even generally," exact a more onerous tax on Illinois insurance companies. The retaliatory statute applies the laws of the foreign jurisdiction to all such companies from States that tax Illinois companies at a rate higher than Illinois taxes companies from that State. However, all companies from that State must pay at least a tax equal to 2% of the net taxable premium income regardless of the amount at which those companies would be taxed after applying the law of their home jurisdiction.

Plaintiff also notes the replacement of the term "on the same basis or rate" in the pre-1937 retaliatory statute with the phrase "the payment of penalties, fees, charges or taxes required in the aggregate" in the current statute when describing the calculation necessary to determine whether the retaliatory tax applies. We cannot discern, however, how this change in describing the elements the Department must use in its calculations affects whether the Department must look to the taxes paid by Illinois insurers doing business in New York before assessing a retaliatory tax.

Plaintiff cites *People ex rel. Stevens v. Fidelity & Casualty Insurance Co.* (1894), 153 Ill. 25, and *Metropolitan Life Insurance Co. v. Boys* (1920), 296 Ill. 166, and argues that the Department must examine the effect of

the foreign State's taxation provisions on Illinois companies doing business there before assessing a retaliatory tax. We believe the plaintiff misapprehends this court's holding in both of those cases. In *Fidelity & Casualty* the court concluded that the retaliatory statute then in effect did not preclude a company incorporated under the laws of New York and authorized by that State to conduct a multiform insurance business from being admitted to conduct such a business in Illinois. The court reasoned that the retaliatory provision did not apply where the New York law was unclear. The court noted that the record did not demonstrate that New York law would be interpreted to prohibit an Illinois insurance company from doing a multiform insurance business in New York if authorized to conduct such a business under Illinois law. (*Fidelity & Casualty*, 153 Ill. at 39-40.) In *Boys* there was a similar question regarding the interpretation of New York law. In both cases the court looked to the application of the foreign law on Illinois insurers because an assessment or refund of a retaliatory tax was dependent upon the construction of the foreign law. In neither case did the court look to the taxation of the foreign State to determine if the taxes paid by Illinois insurance companies doing business in the foreign jurisdiction were taxed at a more onerous rate than those companies would incur under Illinois law. See also *Massachusetts Mutual Life Insurance Co. v. Parkinson* (1953), 414 Ill. 120 (court examined whether Massachusetts provision applied to any existing Illinois companies doing business there to determine whether to use provision to assess retaliatory tax because provision, by its terms, could not apply to future Illinois companies doing business there).

The plaintiff here does not dispute the construction of the New York taxing provision, and therefore this court's decisions in *Fidelity & Casualty* and *Boys* are in-

apposite. Determining which of the various components in the New York taxation scheme are applicable to an Illinois insurance company doing business in New York may require an examination of that company's business experience due to the vagaries of New York law. However, it is clear from a reading of the New York provisions that an Illinois insurance company is subject to taxation under any of the provisions. We believe that the retaliatory statute therefore requires the Department to examine the Illinois business experience of each New York company and apply New York's taxation scheme when assessing a retaliatory tax.

We believe that the rationale explicated by the court in *Union Central* and *Germania* is equally applicable to modern-day insurance taxation schemes similar to the one employed by New York. For example, New York's multicomponent insurance tax may have a disparate effect on Illinois insurers doing business in New York due to the nature of those insurers' business experience, the salaries of their corporate officers, and the location of their business and investment capital. This effect may preclude certain types of Illinois insurance companies from doing business in New York based on their projected business experience in the same way that Louisiana's tax on insurers in *Germania* may have accounted for the absence of Illinois insurers doing business in Louisiana. As several courts have noted, the common justification for retaliatory legislation is the promotion of the interstate business of domestic insurers by deterring other States from enacting burdensome or excessive insurance taxation schemes. (See, *e.g., Western & Southern Life Insurance Co. v. State Board of Equalization* (1981), 451 U.S. 648, 668-69, 68 L. Ed. 2d 514, 531, 101 S. Ct. 2070, 2083.) Application of the retaliatory tax on a company-by-company basis may deter other States from enacting burdensome or discriminatory taxation

schemes on Illinois companies that exhibit certain characteristics or engage in particular types of business.

We note that the plaintiff bases many of its arguments on the appellate court's previous decision in *Minnesota Mutual Insurance Co. v. O'Connor* (1981), 98 Ill. App. 3d 1040. Without expressing an opinion regarding the result reached in that case, we believe that the court applied improper analysis to invalidate the assessment of a retaliatory tax on a Minnesota company for reasons that are apparent here. We therefore overrule those parts of the decision in *Minnesota Mutual* that are inconsistent with this opinion.

## II

The plaintiff's second attack on the methodology used by the Department concerns the calculation of income tax when determining which State exacts a higher tax and how much retaliatory tax is owed by the New York insurer. The plaintiff points to the nonpremium component of the New York insurance taxation scheme, which may include a 9% income tax capped by a ceiling of 1.6% of premiums written on New York business. (See N.Y. Tax Law §1502(3) (McKinney 1980).) The plaintiff argues that because the amount of franchise tax assessed under New York law may include a tax on income, the income tax assessed by Illinois on New York companies should be taken into account when calculating whether to assess a retaliatory tax. Plaintiff draws support for its contention by noting that the retaliatory statute requires the Department to aggregate burdens. Plaintiff also notes that when assessing the Illinois 2% premium tax the Department is required to give a foreign insurer credit for income tax it paid to Illinois during the previous year. See Ill. Rev. Stat. 1987, ch. 73, par. 1021(2)(b).

The retaliatory statute requires the Department to compare "the payment of penalties, fees, charges or taxes" required by the foreign jurisdiction with the "penalties, fees, charges or taxes required in the aggregate for like purposes by this Code or any other law of this State." (Ill. Rev. Stat. 1987, ch. 73, par. 1056.) In *Pacific Mutual Life Insurance Co. v. Gerber* (1961), 22 Ill. 2d 196, 201, this court thought "it clear that the legislature included within [the retaliatory statute's] scope only the taxes paid by insurance companies, as such, as a condition precedent to their doing business in the respective States." Under the New York taxation scheme, the tax component based on net income, as well as all other components of the franchise tax, is imposed upon "[e]very domestic insurance corporation and every foreign or alien insurance corporation, for the privilege of exercising its corporate franchise." (N.Y. Tax Law §1501 (McKinney 1980).) However, Illinois' assessment of income tax does not distinguish an insurance company from any other company accruing net income within the State. We do not believe that the allowance of a credit for income tax paid the previous year, up to the 2% tax on net premium income, converts the income tax paid into a tax peculiar to insurance companies. We therefore conclude that the income tax assessed on foreign insurers by Illinois in excess of 2% of premiums issued should not be included in the calculation by the Department to determine whether to apply a retaliatory tax.

## III

The plaintiff finally raises here its argument in the appellate court that, as applied by the Department, the retaliatory statute violates the uniformity and equal protection provisions of the Illinois Constitution. (Ill. Const. 1970, art. I, §2; art. IX, §2.) Initially, plaintiff argues that the retaliatory tax violates its guarantee of equal

protection because, by applying whichever law results in the greatest revenue, the Department's methodology is not related to a legitimate State purpose.

In analyzing plaintiff's claim, we look to and adopt the rationale of *Western & Southern Life Insurance Co. v. State Board of Equalization* (1981), 451 U.S. 648, 68 L. Ed. 2d 514, 101 S. Ct. 2070. There, the Court upheld the application of the California retaliatory tax against attack under the equal protection clause of the Federal Constitution. California applied its retaliatory tax on the same company-by-company basis to which plaintiff objects here. Nevertheless, the Court in *Western & Southern* found that the "principal purpose of retaliatory tax laws is to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes." (451 U.S. at 668, 68 L. Ed. 2d at 531, 101 S. Ct. at 2083.) The Court concluded that California's assessment of the retaliatory tax was rationally related to that purpose.

We believe that a similar conclusion should be reached under the equal protection clause of the Illinois Constitution. Assessing a retaliatory tax on an out-of-State company doing business in Illinois according to the foreign State's multicomponent taxation scheme when that State would impose a higher rate on a similar Illinois company doing business there is rationally related to deterring other States from enacting discriminatory or excessive taxes. Otherwise, a foreign State could effectively preclude an Illinois company with certain characteristics from doing business in that State.

Plaintiff's contention that the assessment of the retaliatory tax violated the uniformity provision of the Illinois Constitution is twofold. First, plaintiff argues that the retaliatory tax is not applied uniformly because the burden of the New York tax is not applied to all New York companies, but only to those companies whose New York

tax is greater than would be imposed under Illinois law. Second, plaintiff contends that the classification of New York companies based on business experience is not a real and substantial difference for purposes of retaliation.

The uniformity provision contained in article IX, section 2, of the Illinois Constitution provides:

"In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." (Ill. Const. 1970, art. IX, §2.)

The validity of a tax classification under that provision is determined by whether there is a "real and substantial difference" between the subjects or objects taxed and those not taxed and whether the classification bears some reasonable relationship to the object of the legislation or to public policy. See *Federated Distributors, Inc. v. Johnson* (1988), 125 Ill. 2d 1, 15.

We do not believe that we are presented with more than one classification here, however, and therefore need not engage in such an analysis. As the defendants note, the retaliatory tax is applied uniformly to all New York companies. Yet because of the vagaries of the New York law and the business experiences of the different companies, some but not all New York companies may be liable for the tax in certain years. Likewise, it is the New York taxing provisions, and not the retaliatory statute, which classify New York companies based on business experience. All New York companies are subject to the New York tax provisions when the Department determines whether a retaliatory tax is owed.

In *Home Insurance Co. v. Swigert* (1882), 104 Ill. 653, the court held that the retaliatory statute in effect then did not violate the uniformity clause of the Illinois Constitution of 1870 (Ill. Const. 1870, art. IX, §1). We do not believe that the plaintiff presents a compelling rea-

son to alter that result. We therefore hold that the Department's application of the retaliatory statute described here does not infringe on the dictates of our State constitution's uniformity requirement.

For the foregoing reasons, the judgment of the appellate court, reversing the judgment of the trial court, is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*