# Illinois Official Reports

## Appellate Court

*United States Liability Insurance Co. v. Department of Insurance*,
**2014 IL App (4th) 121125**

| | |
|---|---|
| Appellate Court Caption | UNITED STATES LIABILITY INSURANCE COMPANY; NATIONAL INDEMNITY COMPANY; NATIONAL LIABILITY & FIRE INSURANCE COMPANY; CENTRAL STATES INDEMNITY COMPANY OF OMAHA; KANSAS BANKERS SURETY COMPANY; GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO GENERAL INSURANCE COMPANY; GEICO INDEMNITY COMPANY; GEICO CASUALTY COMPANY; GENERAL REINSURANCE CORPORATION; GENERAL STAR NATIONAL INSURANCE COMPANY; GENESIS INSURANCE COMPANY; FAIRFIELD INSURANCE COMPANY; NATIONAL REINSURANCE CORPORATION; and NORTH STAR REINSURANCE CORPORATION, Plaintiffs-Appellees, v. THE DEPARTMENT OF INSURANCE; and MICHAEL T. McRAITH, as Director of the Department of Insurance, Defendants-Appellants. |
| District & No. | Fourth District<br>Docket No. 4-12-1125 |
| Rule 23 Order filed | March 3, 2014 |
| Rule 23 Order withdrawn | May 9, 2014 |
| Opinion filed | May 9, 2014 |

**Held**

*(Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.)*

In an action arising from a dispute over how insurance companies domiciled outside Illinois but conducting business in Illinois should treat overpayments they made on their Illinois income taxes for purposes of the Illinois retaliatory tax, the appellate court found that the retaliatory tax statute unambiguously provides that the income-tax component of the retaliatory tax is the income tax that accrued pursuant to sections 201(a) through (d) of the Income Tax Act, not the income taxes paid, and since Title 50, section 2515.50(b), of the Illinois Administrative Code, which provides that the Illinois basis includes the income tax paid, conflicts with the statute's mandate that the retaliatory tax includes the corporate income tax imposed in a particular year, Title 50, section 2515.50(b), of the Illinois Administrative Code is invalid on the ground that it was inconsistent with the retaliatory tax statute; therefore, the trial court's reversal of the Department of Insurance's decision that the refund at issue had to be accounted on a cash basis for the year in which the refund was received was affirmed and plaintiffs were entitled to apply the refund to the years in which plaintiffs overpaid their taxes.

**Decision Under Review**

Appeal from the Circuit Court of Sangamon County, No. 11-MR-228; the Hon. John Schmidt, Judge, presiding.

**Judgment**

Affirmed.

**Counsel on Appeal**

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Richard S. Huszagh, Assistant Attorney General, of counsel), for appellants.

James S. Dunn, of Springfield, and Tracy D. Williams, William M. Sneed (argued), and Julie M. Weber, all of Sidley Austin LLP, of Chicago, for appellees.

**Panel**

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.
Presiding Justice Appleton and Justice Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendants in this case are the Department of Insurance (Department) and Michael T. McRaith, as the Department's Director. Plaintiffs, United States Liability Insurance Company (USLIC), National Indemnity Company, National Liability & Fire Insurance Company, Central States Indemnity Company of Omaha, Kansas Bankers Surety Company, Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, GEICO Casualty Company, General Reinsurance Corporation, General Star National Insurance Company, Genesis Insurance Company, Fairfield Insurance Company, National Reinsurance Corporation, and North Star Reinsurance Corporation, are a group of insurance companies owned by National Indemnity Company that do business in Illinois.

¶ 2 The Illinois Insurance Code (Insurance Code) requires insurance companies domiciled outside Illinois that conduct business in Illinois to pay a retaliatory tax. 215 ILCS 5/444(1) (West 2010). The dispute in this case centers on how, for retaliatory tax purposes, plaintiffs should have treated an approximately $8.6 million refund that they received in 2004 for overpayments they made on their income taxes in 1999, 2000, and 2001. In reporting their 2004 retaliatory tax, plaintiffs counted and applied the $8.6 million refund for the tax years in which they had overpaid their taxes–1999, 2000, and 2001–thus calculating that they owed $1.9 million in retaliatory taxes. The Department, however, contends the $8.6 million refund should have been counted against plaintiffs' 2004 income, resulting in the payment of a higher retaliatory tax. The Department's contention stems from the language in one of the Department's regulations, which states, "[t]he amount of Illinois Corporate and Replacement income tax paid, decreased by the amount, if any, of any corporate and/or income replacement tax cash refund received in the same calendar year if that cash refund had been considered part of the amount of Illinois Corporate and Replacement income tax paid in the calculation of the annual retaliatory tax in a preceding year." 50 Ill. Adm. Code 2515.50(b)(5) (2000).

¶ 3 In May 2011, the Department Director upheld the Department's interpretation of its regulations as requiring the income tax refunds to be accounted on a cash basis. That month, plaintiffs filed a complaint for administrative review. Following a September 2012 hearing, the circuit court reversed the Department Director's decision and entered judgment for plaintiffs, finding the Department's regulation was invalid because it was "wholly and completely inconsistent" with the retaliatory tax statute.

¶ 4 Defendants appeal, arguing the circuit court erred by reversing the Department Director's decision because section 2515.50(b) of Title 50 of the Illinois Administrative Code does not conflict with section 444(3) of the Insurance Code, as section 444(3) merely identifies the types of taxes, charges, and fees included in the scope of the retaliatory tax.

¶ 5 We disagree and affirm.

## I. BACKGROUND

### A. Statutory Provisions at Issue

¶ 8 Section 444(1) of the Insurance Code, known as the retaliatory tax statute, requires insurance companies domiciled outside of Illinois to "pay penalties, fees, charges, and taxes, in amounts equal to" the aggregate amount of penalties, fees, charges, and taxes Illinois companies must pay when doing business in the foreign company's state. 215 ILCS 5/444(1)

(West 2010). The purpose of the retaliatory tax is to discourage other states from enacting discriminatory or excessive taxes on Illinois companies doing business there. *Mutual Life Insurance Co. of New York v. Washburn*, 137 Ill. 2d 312, 330, 561 N.E.2d 29, 37-38 (1990). The statute specifies that the terms "penalties," "fees," "charges," and "taxes" shall include, among other things, the "taxes collected under State law" and "the Illinois corporate income taxes *imposed* under subsections (a) through (d) of Section 201 of the Illinois Income Tax Act after any tax offset allowed under Section 531.13 of this Code." (Emphasis added.) 215 ILCS 5/444(3) (West 2010).

¶ 9　　　　Subsections (a) through (d) of section 201 of the Illinois Income Tax Act set forth two types of income taxes a corporation must pay. 35 ILCS 5/201(a) to (d) (West 2010). During the period of time of this dispute, a corporation was required to pay 4.8% of its net income in taxes. 35 ILCS 5/201(b)(8) (West 2010). A corporation was also required to pay a personal property tax replacement income tax at a rate of 2.5% of a corporation's net income. 35 ILCS 5/201(c), (d) (West 2010). These two taxes, collectively, will hereinafter be referred to as the "income tax."

¶ 10　　　　Under Illinois law, an insurance company is also required to pay a "premium" or "privilege" tax (hereinafter referred to as the "privilege tax") at a rate of 0.5% of gross insurance premiums. 215 ILCS 5/409(1) (West 2010). If an insurance company has paid Illinois income tax in excess of 1.5% of premiums, it may receive a credit against the privilege tax liability. 215 ILCS 5/409(2) (West 2010). A privilege tax credit is based on the amount of income tax "paid by the company, on a cash basis." 215 ILCS 5/409(2) (West 2010).

¶ 11　　　　Section 401(a) of the Insurance Code authorizes the Director "to make reasonable rules and regulations as may be necessary" for effectuating the insurance laws of the State of Illinois. 215 ILCS 5/401(a) (West 2010). The Department's regulations governing the retaliatory tax are included in Title 50, section 2515, of the Illinois Administrative Code (50 Ill. Adm. Code 2515 (2000)). In particular, section 2515.50 provides that to calculate the amount of retaliatory tax due, a corporation must compare the state of Illinois's basis (Illinois Basis) to the state of incorporation's basis (Foreign Basis). 50 Ill. Adm. Code 2515.50 (2000). The Illinois Basis is the sum of, among other things:

> "[t]he amount of Illinois Corporate and Replacement income tax paid, decreased by the amount, if any, of any corporate and/or income replacement tax cash refund received in the same calendar year if that cash refund had been considered part of the amount of Illinois Corporate and Replacement income tax paid in the calculation of the annual retaliatory tax in a preceding year." 50 Ill. Adm. Code 2515.50(b)(5) (2000).

Where the Illinois Basis is less than the Foreign Basis, the insurance company must pay a retaliatory tax. 50 Ill. Adm. Code 2515.50 (2000). A corporation pays the retaliatory tax in accordance with section 444 and is required to file "an annual return for the preceding calendar year on or before March 15." 215 ILCS 5/444.1(1) to (2) (West 2010).

¶ 12　　　　　　　　　　　　B. The Administrative Proceedings

¶ 13　　　　In 2004, after filing amended state income tax returns for tax years 1999 and 2000, plaintiffs collectively received a refund of approximately $8.6 million. On their 2004 retaliatory tax return, plaintiffs included approximately $1.9 million of the $8.6 million refund based on plaintiffs' belief that the refund should be counted for the years in which they made

overpayments–1999, 2000, and 2001. In October 2005, the Department issued an invoice to one of the plaintiffs, USLIC, alleging USLIC owed additional privilege and retaliatory taxes for 2004. USLIC filed a protest challenging the Department's proposed assessment and requesting a hearing on the matter. Specifically, USLIC argued it correctly reported the refund of Illinois income tax it received in 2004 because its share of the refund had to "be taken into account in 2004 only to the extent it was considered part of the 'income tax paid' that generated a privilege or retaliatory tax benefit for a year prior to 2004." Alternatively, USLIC claimed that section 444(3) of the Insurance Code required "that the amount of Illinois Income Tax imposed be taken into account on an incurred basis rather than a cash basis, so that no amount of the 1999-2000 Income Tax refund received in 2004 should have been taken into account in 2004." In December 2005, the Director assigned a Department employee to conduct a hearing on USLIC's protest.

¶ 14 In April 2006, the Department advised a second group of the plaintiffs, General Reinsurance Corporation, General Star National Insurance Company, Genesis Insurance Company, Fairfield Insurance Company, National Reinsurance Corporation, and North Star Reinsurance Corporation, that it would not issue those plaintiffs' requested refunds of approximately $98,000 of retaliatory taxes that those plaintiffs alleged they erroneously paid in 1999. The second group of plaintiffs requested a hearing. Likewise, in June 2006, the remaining plaintiffs, National Indemnity Company, National Liability & Fire Insurance Company, Central States Indemnity Company of Omaha, Kansas Bankers Surety Company, Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, and GEICO Casualty Company, filed a protest after the Department issued invoices alleging those plaintiffs owed additional privilege and retaliatory taxes for 2004.

¶ 15 The three cases were consolidated before a single hearing officer. In 2005 and 2006, the parties filed cross-motions for summary judgment. In March 2011, the hearing officer issued proposed findings of fact and conclusions of law, recommending the Director grant the Department's motion for summary judgment, deny plaintiffs' protest, and order plaintiffs to pay the invoices issued by the Department. In April 2011, the Director adopted the hearing officer's findings of fact, conclusions of law, and recommendations. The Director noted that although USLIC initially challenged the validity of the Department's regulations, including sections 2525.60 and 2515.50, USLIC was no longer making such a challenge, "perhaps" because it understood the Department could not "challenge, let alone invalidate, one of its own regulations." The Director then went on to find that the Department's interpretation of its regulations was correct in that refunds of corporate income and replacement taxes are to be accounted on a cash basis. Thus, the Director granted the Department's motion for summary judgment, denied plaintiffs' protests, and ordered USLIC and the third group of plaintiffs to pay the Department invoices.

¶ 16                          C. Circuit Court Proceedings

¶ 17 In May 2011, plaintiffs filed a complaint for administrative review in the Sangamon County circuit court. A hearing commenced in September 2012. In addition to challenging the Department's interpretation of its regulation, plaintiffs asserted the regulation was inconsistent with the statute and therefore invalid. Specifically, plaintiffs pointed out that section 444(3) of the Insurance Code (215 ILCS 5/444(3) (West 2010)) specified the retaliatory tax included,

among other things, a percentage of the Illinois corporate income taxes "imposed" under section 201 of the Income Tax Act. By contrast, the Department's regulation specified that each party's basis, used to calculate the retaliatory tax, included the income tax "paid." 50 Ill. Adm. Code 2515.50(b)(5) (2000). According to plaintiffs, "paid" and "imposed" connoted two different meanings; thus, the regulation was inconsistent with section 444(3) of the Insurance Code. (Plaintiffs also argued the Department's application of the retaliatory tax was unconstitutional; however, plaintiffs have not renewed that argument on appeal.) For their part, defendants argued the retaliatory tax statute was "broad" and "flexible," and that the use of the word "imposed" in the statute encompassed when the tax was "paid," not when the tax "accrued."

¶ 18    In September 2012, the circuit court entered judgment for plaintiffs. Specifically, the court found that the Department's regulation, contained in Title 50, section 2515.50(b)(5), of the Illinois Administrative Code, was invalid because it was "wholly and completely inconsistent" with the retaliatory tax statute. The court's written order also included a finding that no just cause existed to delay enforcement of its order.

¶ 19    This appeal followed.

¶ 20                                II. ANALYSIS

¶ 21    On appeal, defendants assert the circuit court erred by reversing the Director's decision. Specifically, defendants posit the court erred by finding that Title 50, section 2515.50(b)(5), of the Illinois Administrative Code conflicts with section 444(3) of the Insurance Code because, contrary to the court's finding, section 444(3) of the Insurance Code does not mandate the use of an accrual basis of accounting to report Illinois income tax payments and refunds when calculating the retaliatory tax, nor does it address the temporal accounting issue at all. Rather, according to defendants, section 444(3) is unambiguous and merely identifies the *types* of taxes, charges, and fees that are included in the scope of the retaliatory tax. Thus, defendants contend, no conflict exists between the statute and the regulation. In the alternative, defendants argue that if section 444(3) of the Insurance Code is ambiguous, this court should adopt the Department's interpretation of the statute.

¶ 22            A. Standards Governing Statutory Interpretation

¶ 23    "The interpretation of a statute is a question of law, which we review *de novo.*" *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380, 899 N.E.2d 227, 232 (2008). Our "primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature." *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440, 925 N.E.2d 1113, 1117 (2010). The "most reliable indicator of such intent is the language of the statute, which is to be given its plain and ordinary meaning." *Id.* When ascertaining the plain meaning of the statute, we consider the statute as a whole, the subject it addresses, and the legislature's apparent intent in enacting it. *Id.* "When the statutory language is clear and unambiguous, it must be applied as written, without resort to extrinsic aids of statutory construction." *Id.* By contrast, where a statute is ambiguous–that is, where a statute is capable of being understood by reasonably well-informed persons in two or more different ways–we may consider extrinsic aids of construction. *Id.* In addition, where a statute is ambiguous and the agency has rendered an interpretation of the statute, " 'the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, \*\*\*

- 6 -

the question for the court is whether the agency's answer is based on a permissible construction of the statute.' " *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 657, 840 N.E.2d 704, 709 (2005) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984)).

¶ 24     Accordingly, we start our inquiry by looking to the language of section 444(3) of the Insurance Code.

¶ 25                         B. Section 444(3) of the Insurance Code

¶ 26     As previously detailed, a foreign corporation's retaliatory tax is calculated by comparing the Illinois Basis to the Foreign Basis. Section 444(3) of the Insurance Code specifies that the income-tax component of the Illinois Basis consists of "the Illinois corporate income taxes *imposed* under subsections (a) through (d)" of the Income Tax Act. (Emphasis added.) 215 ILCS 5/444(3) (West 2010).

¶ 27     Plaintiffs contend that the word "imposed" has an unambiguous, specific meaning within the field of tax law that is not the same as "paid." In support of their argument, plaintiffs point out that the legislature, in enacting the retaliatory tax statute, used specific language when referring to the taxes making up the retaliatory tax calculation–"collected" when referring to the penalties, fees, charges, and taxes in article XXV of the Insurance Code, and "imposed" when referring to the corporate income tax under section 201, subsections (a) to (d), of the Income Tax Act. Thus, plaintiffs contend the legislature intended the word "imposed" to mean something different from "collected."

¶ 28     Defendants, on the other hand, assert that the word "imposed" does not have the unambiguous meaning that plaintiffs attribute to it. Rather, defendants claim, "imposed" may be used to signify the "existence or application of an obligation generally" and thus can encompass the word "paid." According to defendants, when reading section 444(3) as a whole and in conjunction with the rest of section 444 and the Insurance Code, the legislature clearly intended for section 444(3) to define the *scope* of the taxes, charges, and fees *included* in the retaliatory tax. With respect to why the legislature used the word "imposed" when referring to the corporate income tax and "collected" when referring to other taxes making up the retaliatory tax calculation, defendants assert the legislature likely adopted the word "imposed" because that term is used by section 201 of the Income Tax Act.

¶ 29     Defendants are correct that section 201 of the Income Tax Act uses the word "imposed" to refer to income taxes. This may explain why the legislature used the word "imposed" in the retaliatory tax statute when referring to income taxes and "collected" when referring to the other taxes comprising the retaliatory tax calculation. Defendants are also correct that in *Lewyt Corp. v. Commissioner of Internal Revenue*, 349 U.S. 237, 240 (1955), the Supreme Court, in interpreting a section of the Internal Revenue Code, stated that the word " 'imposed' " could be used "in one of two different senses–either to identify the tax or to define the amount of the tax that is to be levied and collected."

¶ 30     Nonetheless, we conclude that, in this case, the legislature clearly did not intend the word "imposed" to merely identify the types of taxes included in the retaliatory tax. In particular, we find persuasive plaintiffs' assertion that if the legislature had intended the amount of income tax included in the retaliatory tax calculation to be the amount of income tax *paid*, it could have made that clear by referencing section 601(a) and/or section 803 of the Income Tax Act, both of which govern the amount of Illinois income tax a corporation actually pays during a

calendar year. See 35 ILCS 5/601(a), 803 (West 2010). Instead, the retaliatory tax statute references income taxes "imposed" under section 201 of the Income Tax Act. Section 201 of the Income Tax Act sets forth the rates at which an income tax is to be calculated but does not include a temporal component. However, section 444.1 of the Insurance Code requires a corporation to file an annual retaliatory tax return on or before March 15 "for the preceding calendar year." 215 ILCS 5/444.1 (West 2010). Thus, in reading section 444.1 of the Insurance Code in conjunction with section 201 of the Income Tax Act, the legislature apparently intended the income-tax component of the Illinois Basis to be the income tax that accrued during the preceding calendar year.

¶ 31    Defendants point out that in another portion of the Insurance Code, section 409(2), the legislature specifically stated that for purposes of computing credits based on income taxes, the credit equals "the excess amount, if any, by which the aggregate income taxes *paid* by the company, *on a cash basis*, for the preceding calendar year" exceed a specific amount. (Emphases added.) 215 ILCS 5/409(2) (West 2010). Defendants contend this section of the Insurance Code shows that when the legislature intends to prescribe a specific accounting method, it does so; thus, because the legislature did not specify a type of accounting to be used to calculate the retaliatory tax, the Department could prescribe a cash-basis method in its regulation without conflicting with the statute.

¶ 32    Although the legislature did not specify that an accrual method should be used to calculate the income-tax component of the retaliatory tax, the legislature *did* use the word "imposed" instead of the word "paid." The word "impose" is defined as "to establish or apply by authority [(a tax, new restrictions, penalties)]." Merriam-Webster's Collegiate Dictionary 582 (10th ed. 2000). In this instance, defendants' reading of the word "imposed" to encompass the word "paid" is too broad, particularly in light of the Illinois Supreme Court's directive that because the " 'retaliatory statute is penal,' " it is " 'subject to the rule of strict construction.' " *Mutual Life Insurance Co.*, 137 Ill. 2d at 324, 561 N.E.2d at 35 (quoting *Metropolitan Life Insurance Co. v. Boys*, 296 Ill. 166, 172, 129 N.E. 724, 726 (1920)). If "imposed" signified when the income tax was "paid" rather than when it "accrued," plaintiffs would have to pay an additional $2.7 million in retaliatory taxes that they would not have originally had to pay if they had not overpaid their income taxes in 1999, 2000, and 2001. The legislature could not have intended such a result given that such an interpretation effectively punishes plaintiffs for overpaying their taxes. See *Coram v. State of Illinois*, 2013 IL 113867, ¶ 57, 996 N.E.2d 1057 (When construing statutes, the court "presumes that the legislature did not intend to create absurd, inconvenient, or unjust results.").

¶ 33    Defendants also argue the language in section 444(3)–"[t]he terms 'penalties', 'fees', 'charges', and 'taxes' in subsection (1) of this Section *shall include*" (emphasis added) (215 ILCS 5/444(3) (West 2010))–makes clear that the purpose of section 444(3) is merely to define the scope of the taxes, penalties, and charges included in the retaliatory tax and not to proscribe a specific accounting method. We disagree that this language in section 444(3) precludes a finding that "imposed" signifies "incurred" or "accrued" rather than "paid." To the contrary, section 444(3) can be read as stating the "penalties," "fees," "charges," and "taxes" include the Illinois corporate income taxes that "accrued" or "became due" under subsections (a) to (d) of section 201 of the Income Tax Act. We also reject defendants' contention that because section 444(1) of the Insurance Code specifies a foreign corporation owes a retaliatory tax if the foreign state requires "the *payment* of penalties, fees, charges, or taxes" (emphasis added) (215

ILCS 5/444(1) (West 2010)) greater than those required under Illinois law, then the Department can use the time of payment, not the time of accrual, to calculate the Illinois income-tax component. Section 444(3) goes on to specify that the " 'penalties,' " " 'fees,' " " 'charges,' " and " 'taxes' " in section 443(1) include "income or personal property taxes *imposed* by other states or countries." (Emphasis added.) 215 ILCS 5/444(3) (West 2010). Thus, the language used to specify the foreign income-tax component of the retaliatory tax mimics the language used to specify the Illinois income-tax component of the retaliatory tax. In other words, section 444(3) does not define the foreign states' income-tax component as the "income tax *paid*" but rather as the "income or personal property taxes *imposed*." (Emphasis added.) 215 ILCS 5/444(3) (West 2010). Again, to "impose" is "to establish or apply by authority." Merriam-Webster's Collegiate Dictionary 582 (10th ed. 2000).

¶ 34    In addition, defendants contend that because section 444(3) of the Income Tax Act uses the word "imposed" to refer to the hypothetical taxes that a foreign state would impose on an Illinois corporation doing business in that state, the word "imposed" when referring to Illinois income taxes likewise cannot refer to *actual* taxes. We find this argument unpersuasive because whether "imposed" signifies "paid" or "accrued," any comparison of the Illinois taxes to the foreign state taxes would necessarily involve a consideration of the hypothetical taxes that an Illinois corporation would owe in the foreign state.

¶ 35    Finally, defendants assert that plaintiffs' interpretation of section 444(3) will force corporations whose tax year is not the calendar year to create a second set of tax records in addition to the one they normally keep. Defendants also contend plaintiffs fail to take into account that although corporate income taxes are "generally due" on March 15 for the preceding calendar year, corporations are entitled to automatic seven-month extensions to file their returns. See 86 Ill. Adm. Code 100.5020(b) (2010). Thus, the only information a corporation taking such an extension would have to report on their retaliatory tax return by the March 15 deadline would be what it actually paid, typically in quarterly installments, which is exactly what the Department's regulation requires. Plaintiffs respond that the Internal Revenue Code requires insurance companies to adopt a calendar year as their fiscal year, and the Income Tax Act requires taxpayers to use federal taxable income as the starting point in calculating Illinois taxable income. However, while section 843 of Title 26 of the Internal Revenue Code provides that, generally, "the annual accounting period for each insurance company subject to a tax imposed by this subchapter shall be the calendar year," it also states that "an insurance company which joins in the filing of a consolidated return *** may adopt the taxable year of the common parent corporation even though such year is a not a calendar year." 26 U.S.C. § 843 (2006). Thus, defendants are correct that an insurance company could have a different fiscal year than the calendar year and thus would be required to keep a second set of tax records.

¶ 36    Nonetheless, it is more plausible that the legislature would impose such a requirement than that it would require a corporation to owe more retaliatory taxes than it would have originally owed simply because the corporation initially overpaid its corporate income tax. Again, we note the supreme court has stressed the retaliatory tax statute is penal in nature and " 'must be confined to such cases as fall within its letter.' " *Mutual Life Insurance Co.*, 137 Ill. 2d at 324, 561 N.E.2d at 35 (quoting *Metropolitan Life Insurance Co.*, 296 Ill. at 172, 129 N.E. at 726).

¶ 37    Based on the foregoing, we conclude the retaliatory tax statute unambiguously specifies that the income-tax component of the retaliatory tax is the income tax that accrued under

section 201(a) through (d) of the Income Tax Act, not the income tax paid. We now turn to whether the Department's regulation is consistent with the statute.

### C. The Department's Regulation

As previously detailed, Title 50, section 2515.50(b), of the Illinois Administrative Code specifies that the Illinois basis includes the amount of income tax *paid.* 50 Ill. Adm. Code 2515.50(b)(5) (2000). Because this language conflicts with the statute's mandate that the retaliatory tax includes the corporate income tax *imposed* in a particular year, we conclude Title 50, section 2515.50(b), of the Illinois Administrative Code is invalid. See *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 38, 998 N.E.2d 1227 ("Regulations that are inconsistent with the statute under which they are adopted will be held invalid.").

### III. CONCLUSION

For the reasons stated, we affirm the circuit court's judgment.

Affirmed.